George Henry JACOBS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–05–00099–CR.

Court of Appeals of Texas, Houston (14th Dist.).

July 27, 2006.

---

Lance Craig Hamm, for appellant.

Stephen Christopher Taylor, Humble, for The State of Texas.

Panel consists of Justice FOWLER, EDELMAN, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

After a bench trial, appellant George Henry Jacobs was convicted of the offense of felony theft by deception. On appeal, Jacobs challenges the legal and factual sufficiency of the evidence supporting his conviction, arguing the evidence only demonstrates a civil contract dispute, and is insufficient to support a finding of criminal intent. Because we agree the evidence shows only appellant's failure to fully perform a contract, we reverse the conviction, dismiss the indictment, and render a judgment of acquittal.

## I. FACTUAL AND PROCEDURAL HISTORY

The complainant, Gordon Pattison, owns properties in Somerville, Burton, Carmine, and Bluebonnet, Texas. Pattison wanted someone to perform repair or remodeling work on the properties in exchange for free rent. One of Pattison's tenants recommended appellant for the job. On December 3, 2002, appellant and Pattison entered into a written contract, agreeing *inter alia* that appellant would lease the Somerville property for $400.00 per month, but would not be obligated to pay rent for the first five months. Instead, appellant would repair the porch and install a steel roof on the Somerville Property by February 15, 2003, and repair the windows, front door, and the hardwood floors "as needed" by April 15, 2003. The contract required Pattison to pay for the materials necessary for the roof repairs. Accordingly, Pattison gave appellant a check for $200.00 on December 3, 2002, and after appellant produced a list of roofing materials needed and their cost, Pattison gave appellant a second check for $1,400.00. Appellant, however, did not move into the Somerville property.

Before the February 15, 2003 deadline to repair the Somerville roof, appellant and Pattison negotiated a series of agreements for appellant to perform work on other properties. These agreements were independent of the December, 2002 contract. First, appellant installed a wall, closet, bathtub, sink, and toilet in Pattison's Burton property. Pattison originally agreed to pay appellant $1,000.00 for this project, but because appellant did not provide the fixtures, Pattison reduced the payment to $850.00. Although Pattison considered the job incomplete because appellant did not install a closet shelf, and because a ventilation pipe bent the soffit on the outside of the house, Pattison paid appellant for the work.

Appellant and Pattison then verbally agreed appellant would hang doors and lay a linoleum floor at Pattison's Carmine property. Appellant and an assistant performed the work, and appellant was paid for this project as well.

Pattison next agreed to pay appellant $300.00 to remove a tree leaning on a house owned by Pattison's former son-in-

law. The record does not indicate whether appellant performed or was paid for this work.

Appellant did not repair the roof of the Somerville Property by February 15, 2003, as agreed, and Pattison asked appellant to return the $1,600.00. Appellant refused, and Pattison filed charges on or about February 24, 2003. Detective Michael Davis of the Brenham Police Department was assigned to the case. Davis took Pattison's statement, and photographed the Somerville property.

After Pattison pressed charges, appellant and Pattison agreed appellant would renovate the porch on the Somerville property for an additional payment of $600.00.[1] Appellant performed the work, and Pattison paid him. This was the only project Pattison considered complete.

Appellant and Pattison then orally modified their December, 2002 written contract regarding the Somerville property, agreeing that appellant would not refund the $1,600.00 for roofing materials and would not repair the roof on the Somerville property, but instead would perform work at Pattison's home in Bluebonnet. Specifically, they agreed appellant would erect a building, install a kitchen sink and an outdoor outlet, change a light fixture, reroute a ditch, remove a four-inch layer of dirt or concrete,[2] and provide and pour concrete for a driveway. Appellant and an assistant worked on the project for six hours a day for the first two days, but then worked only two hours a day. On some days, rain prevented appellant from working on the Bluebonnet project. When all of the work for the Bluebonnet driveway was complete except for pouring the concrete, appellant insisted that Pattison pay for the concrete. When Pattison refused, appellant abandoned the job. Pattison bought the concrete for approximately $458.00 and paid a contractor approximately $350.00 to correct appellant's installation of the concrete forms and pour the "flat surface" of concrete.[3] Pattison considered pouring the concrete to be the major part of the Bluebonnet project.

Before trial,[4] appellant offered to repay Pattison $1,000.00 immediately and to pay the remaining $600.00 with a post-dated check. Unwilling to accept a post-dated check, Pattison refused. Pattison never told the investigating detective the contract had been modified, or that he continued to employ appellant on other projects after charges were filed.

The case was tried on December 15, 2004, and appellant was convicted of theft of property worth more than $1,500.00, but less than $20,000.00. Theft of property of this value is a state jail felony,[5] and appellant received a 180–day probated sentence, and was placed on community supervision

1. Some work to the Somerville porch was included in the original contract. It is not clear if this was additional or different work than that originally provided, or if the parties agreed to substitute for payment for the free rent originally contemplated.

2. It is not clear whether the material removed was dirt or concrete.

3. Pattison testified, "You had to pour the concrete in two forms. One would be the flat surface of it, and then after that set up you'd have to go back and pour this trough. And that still never did get done." He further testified, "I never did get the trough portion of the concrete poured . . . ."

4. Pattison identifies the March 22 trial setting without identifying the year. Court records show the only March setting of the case was a setting for jury trial on March 22, 2004. The case was rescheduled by the trial court, and appellant subsequently waived his right to a jury trial.

5. Tex. Penal Code Ann. § 31.03(e)(4)(A) (Vernon Supp.2005).

for two years. Appellant was also ordered to pay court costs and to pay Pattison $1,600.00 in restitution.

## II. ISSUES PRESENTED

In his first and third issues, appellant argues the evidence is legally insufficient to prove beyond a reasonable doubt that he appropriated $1,600.00 from Pattison by deception, without Pattison's effective consent, and with the intent to deprive Pattison of the funds.[6] In his second issue, appellant argues the evidence is factually insufficient to show he appropriated the money from Pattison by deception.

Appellant's argument for each issue is the same: he contends he was wrongfully convicted of the crime for which he was indicted because the evidence shows only failure to perform the modified contract. We agree.

## III. ANALYSIS

### A. Legal Insufficiency of the Evidence

#### 1. Standard of Review

When reviewing the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State,* 905 S.W.2d 570, 574 (Tex.Crim.App.1995) (en banc). We therefore determine whether any rational trial of fact could have found the essential elements of felony theft by deception beyond a reasonable doubt.

A person commits theft "if he unlawfully appropriates property with intent to de-

prive the owner of property." Tex. Penal Code Ann. § 31.03(a) (Vernon Supp.2005). Appropriation of property is unlawful if it "is without the owner's effective consent." Tex. Penal Code Ann. § 31.03(b)(1) (Vernon Supp.2005); *Stewart v. State,* 44 S.W.3d 582, 589 (Tex.Crim.App.2001) (en banc) (the "crucial element of theft is the deprivation of property from the rightful owner, without the owner's consent....."). "Consent" is not effective if it is induced by deception. *See* Tex. Penal Code Ann. § 31.01(3)(A) (Vernon Supp.2005). As relevant to this case, deception means promising performance "that the actor does not intend to perform or knows will not be performed." Tex. Penal Code Ann. § 31.01(1)(E) (Vernon Supp.2005).

A claim of theft made in connection with a contract requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property. *Baker v. State,* 986 S.W.2d 271, 274 (Tex.App.-Texarkana 1998, pet. ref'd). "If no more than intent and appropriation is shown in a contract claim, nothing illegal is apparent, because under the terms of [a contract] individuals typically have the right to 'deprive the owner of property,' albeit in return for consideration." *Id.* In a contract claim, the State must prove the defendant did not perform the contract and knew he was not entitled to the money, not merely that there is a dispute about the amount rightfully owed. *Id.* The mere fact that one fails to return funds paid in advance after failing to perform a contract does not constitute theft. *Id.* If money was voluntarily given to the appellant pursuant to a contractual agreement and there is insufficient evidence in

---

**6.** Appellant's third issue is phrased as a challenge to the trial court's denial of appellant's motion for instructed verdict; however, such a challenge is in effect a challenge to the legal

sufficiency of the evidence to support the conviction. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990) (en banc).

the record to show the money was obtained by deception, the conviction cannot stand. *Phillips v. State*, 640 S.W.2d 293, 294 (Tex.Crim.App.1982); *Baker*, 986 S.W.2d at 274. In sum, the State must show a rational factfinder could have found appellant had no intention of fulfilling his obligation under the agreement, and his promise to perform was "merely a ruse to accomplish theft by deception." *See King v. State*, 17 S.W.3d 7, 15 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

### 2. No Evidence of Deception

■ Appellant was indicted for "unlawfully appropriat[ing], by acquiring or otherwise exercising control over, property, to-wit: U.S. Currency, of the value of $1,500.00 or more but less than $20,000.00, from Gordon E. Pattison, the owner thereof, without the effective consent of the owner, namely, *by deception*, and with intent to deprive the owner of the property." (emphasis added). When appellant moved for an instructed verdict on the grounds there was no evidence of intent to deceive, the State responded, "Your Honor, under the indictment the State simply alleges a theft, *not a theft by deception*. We're not saying that the defendant tricked Mr. Pattison into giving him money, simply that he made a promise, took some money to perform some work, and then didn't perform the work." (emphasis added). Nevertheless, appellant was found guilty of the offense "as charged in the indictment."

■ The theft statute under which appellant was convicted provides alternative methods of committing theft. *See* TEX. PENAL CODE ANN. § 31.03 (Vernon Supp. 2005); *see also id.* at §§ 31.01(3)(A), and 31.01(1)(E). Because the indictment alleges only one of those methods—theft by deception—appellant could be convicted only if he committed theft by that method. *See Gollihar v. State*, 46 S.W.3d 243, 254–55 (Tex.Crim.App.2001). Despite the lan-

guage of the indictment, the State's evidence failed to demonstrate deception, but merely showed appellant failed to perform the work. As Pattison agreed, "there wasn't anything that [appellant] did to trick [Pattison] into giving him that money."

### 3. No Evidence of Criminal Intent

■ The State also failed to demonstrate criminal intent. In response to appellant's motion for an instructed verdict, the State summed up its position: "So basically by delaying the performance of that work and coming up with different excuses, the State contends that we've demonstrated [appellant's] intent to deprive Mr. Pattison of the $1,600.00 with no intention of doing the work." This contention is both factually and legally mistaken.

First, the State's characterization of the evidence is not supported by the record, in part because the State mistakenly focuses on the superceded December 2002 contract. As a result, the "work" to which the State refers is the Somerville property roof repair. The State's exhibits at trial consisted of (1) the December 2002 written agreement, (2) Pattison's two cancelled checks, (3) the list of roof repair materials appellant gave Pattison on December 5, 2002, and (4) a photograph of the Somerville property taken on or about February 26, 2003, showing the roof repairs had not been performed. The State questioned the investigating detective only regarding matters relevant to appellant's agreement to purchase roofing materials and perform roof repairs to the Somerville property. On appeal, the State maintains its position that the relevant agreement is the written contract of December 2002:

Here, Appellant received $1,600 from PATTISON to purchase materials to make repairs on a rental house. Appellant did not purchase the materials; Ap-

pellant did not make the repairs; and, Appellant did not return the $1,600 to PATTISON. Considering the evidence in the light most favorable to the verdict, it can be concluded that the Trial Court, as a rational trier of fact, could have found the essential elements of THEFT, as alleged in the indictment in Cause No. 13,841.

But, Pattison's testimony conclusively establishes the December 2002 contract was subsequently modified, so that appellant was no longer required to repair the Somerville roof or to apply the $1,600.00 to roof materials:

> Q: So did the defendant then agree that instead of giving you the $1,600 back for the roofing materials that he was going to provide that concrete and pour that driveway and the other miscellaneous jobs around the home?
>
> A: That's correct.
>
> \* \* \* \* \* \*
>
> Q: And you told Mr. Jacobs—I understand under your direct examination you said, Mr. Jacobs, instead of doing the roof at Somerville just let me hire you or switch it to do the concrete work at your residence?
>
> A: Right.
>
> Q: So the contract, then, at that point had been modified from—that the roof was not going to be complied in a timely manner. So the initial contract was, then, modified from Somerville to the concrete work at—
>
> A: [Pattison's address]—
>
> Q:—Bluebonnet Hills?
>
> A:—in Bluebonnet Hills.

Thus, the only performance at issue is appellant's performance of the work at Pattison's Bluebonnet residence.

The source of this misunderstanding was identified at trial; Pattison never told Detective Davis that the contract between appellant and Pattison was modified after Pattison filed charges, even though, as Davis agreed, the contract modification explains why the roof repairs in the written contract were not performed. Davis testified:

> Q: Would the fact that Mr. Jacobs and Mr. Pattison continued to have business dealings after the December 3rd check of $200 and the December 5th check of $1,400 have any impact on your investigation?
>
> A: If I understand you correctly, that would be work performed after the check was issued, would that have made a difference on the status of the report?
>
> Q: Yes.
>
> A: Okay. Of course. That information, of course, would be attached to the report.
>
> Q: And Mr. Pattison didn't give you any of that other information, did he?
>
> A: No, I did not know that.

Davis further testified that if he had known of the contract modification, he would have forwarded that information to the district attorney's office.

 The State is correct that criminal intent may be inferred from surrounding circumstances. *See Coronado v. State,* 508 S.W.2d 373, 374 (Tex.Crim.App.1974). But, failure to perform a promise without other evidence of criminal intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed. Tex. Penal Code Ann. § 31.01(1)(E) (Vernon Supp.2005). If a contract is partially or substantially performed, then intent to commit theft through deception is not

shown by the evidence. *Baker v. State,* 986 S.W.2d 271, 275 (Tex.App.-Texarkana 1998, pet. ref'd).[7]

Here, the State presented no evidence that appellant delayed the Bluebonnet project or made any excuse for failing to perform. The State's evidence instead establishes that appellant and his assistant spent a minimum of twenty-eight hours working on the project, and completed the driveway but for pouring the concrete. There is no evidence appellant did not intend to do the work; rather, he actually performed much of what the modified agreement objectively required him to do.

These facts are similar to those addressed in *Phillips v. State,* 640 S.W.2d 293, 294 (Tex.Crim.App. [Panel Op.] 1982). In *Phillips,* the defendant contracted with the complainants to build an addition to their house, and accepted $6,930.33 as a down payment. As in the present case, the money was paid voluntarily. *See id.* The defendant took some measurements and drew up plans, but did not fully perform the contract. The Court reversed the defendant's conviction, holding that proof of failure to perform is insufficient to prove theft by deception. *Id.*

As in *Phillips,* here the evidence presented shows only a civil contract dispute, and not the necessary criminal intent to support appellant's conviction. The evidence is therefore legally insufficient to sustain appellant's conviction. *See also Peterson v. State,* 645 S.W.2d 807, 812 (Tex.Crim.App.1983) (en banc) (reversing conviction when the evidence failed to show the appellant contractor obtained money by deception); *Cox v. State,* 658 S.W.2d 668, 671 (Tex.App.-Dallas 1983, pet. ref'd) (reversing conviction when the evidence showed the defendant failed to fully perform agreed repair and installa-

tion projects in the complainant's home, and refused to return either the money or the purchased goods).

## IV. CONCLUSION

We sustain appellant's first and third issues, and hold the evidence is legally insufficient to support the conviction. If a legal sufficiency challenge is sustained, we must acquit. *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996) (en banc). We therefore reverse the conviction, dismiss the indictment, and render a judgment of acquittal.

Having rendered a judgment of acquittal, we do not reach appellant's remaining issue.

---

7. *See also Wright v. State,* 14–99–00042–CR, 2001 WL 253468, at 6 (Tex.App.-Houston [14th Dist.] March 15, 2001, no pet.) (agreeing with the principles discussed in *Baker*).