NUMBER 13-07-00493-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ERNESTINE TAMEZ WASHINGTON, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 93rd District Court 

of Hidalgo County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Benavides


Memorandum Opinion by Justice Rodriguez



 A jury found appellant Ernestine Tamez Washington guilty of third-degree felony
theft. See Tex. Penal Code Ann. § 31.03(a), (e)(5) (Vernon 2003). The 93rd District Court
of Hidalgo County sentenced Washington to two years in prison, suspended and probated
the sentence over five years, assessed a fine, and ordered Washington to pay restitution. 
By six issues, Washington contends that the evidence was legally and factually insufficient
to prove, beyond a reasonable doubt, that she possessed the requisite criminal intent to
deprive and deceive and that there was permanent deprivation or loss of a major portion
of enjoyment or value. We affirm.

BACKGROUND

 Washington was employed by Texas Computerized Tax Service (1) (TCTS), a limited
liability corporation, in Weslaco, Texas, from December 1993 until her employment was
terminated on August 2, 2004. James Kiker, who, along with his wife, owned TCTS, lived
in Corpus Christi, Texas and relied on Washington to oversee the day-to-day operations
of the business. On March 12, 2004, Kiker suffered an severe heart attack. Kiker spent
thirty days in the hospital, after which time he was confined to his recliner at home for
nearly six weeks.

 After the heart attack, Washington drove from Weslaco to Corpus Christi every two
to three weeks to visit Kiker. At some point during his convalescence, Kiker had a
discussion with Washington about transferring partial corporate ownership of TCTS to her. (2) 
No paperwork was ever completed regarding any transfer of ownership.

 In April 2004, after her discussion with Kiker regarding the alleged transfer of
ownership, Washington went to Ed Payne Motors in Weslaco, Texas and initiated
negotiations for the purchase of a Dodge Durango. Her sales representative was Arturo
Aguirre. The facts surrounding the negotiation and eventual sale of the Durango are
disputed by the parties, (3) but it is uncontroverted that Washington represented herself as
a co-owner of TCTS and that the Durango was eventually financed as a business purchase
under Kiker's name. To facilitate the credit check, Washington supplied Ed Payne Motors
with Kiker's driver's license number, social security number, and all other information
necessary to complete the check. All documents incident to the sale--the purchase order,
title application, proof of insurance, customer claim form, odometer disclosure--were
placed in an envelope and given to Washington so she could obtain Kiker's signature on
each document. Washington eventually returned the signed documents to Ed Payne
Motors. Washington admits that she forged Kiker's signature on the documents.

 Washington took possession of the Durango and put over 13,000 miles on the
vehicle between April 26 and July 20, 2004. On July 20, 2004, Washington towed the
Durango to Ed Payne Motors because of mechanical troubles and never returned to pick
it up. Washington had purchased the vehicle for $38,549.00; after being returned by
Washington, Ed Payne Motors resold the Durango for $24,900.00. 

 Sometime in July 2004, Kiker received a phone call from the Chrysler Financial
Corporation inquiring about delinquent payments on the Durango. This was the first notice
Kiker received that the Durango had been financed under his name. 

 On July 21, 2004, Kiker filed a report with the Weslaco police department
complaining that Washington had financed a car under his name without his permission. 
Washington was arrested on January 18, 2005, and on December 15, 2005, the grand jury
indicted her for third-degree felony theft, charging that Washington:

 on or about the 26th day of April A.D., 2004 . . . in Hidalgo County, Texas, did then
and there unlawfully appropriate, by acquiring and otherwise exercising control over,
property, to-wit: one Dodge motor vehicle, of the value of $20,000.00 or more but
less than $100,000.00, from Arturo Aguirre, the owner thereof, without the effective
consent of the owner, and with intent to deprive the owner of the property; and
[Washington] acted with the intent to deprive said owner of said property by
withholding from said owner said property permanently and for so extended a period
of time that a major portion of the value and enjoyment of said property was lost to
said owner, and without the effective consent of said owner, in that this consent was
induced by deception, to wit: [Washington] created and confirmed, by words and
conduct, a false impression of fact, not believing it to be true, that was likely to affect
and did affect the judgment of such owner.


 Washington pleaded not guilty to the charge, and a jury trial was held on July 19-21,
2006. The jury returned a guilty verdict, and the trial court sentenced Washington to two
years in prison, suspended and probated the sentence over five years, assessed a
$1,500.00 fine, and ordered Washington to pay $7,500.00 in restitution. This appeal
ensued.

STANDARD OF REVIEW & APPLICABLE LAW

 In conducting a legal sufficiency review, we view the evidence in the light most
favorable to the verdict to determine whether a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Hooper v. State, 214 S.W.3d
9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). We
do not reevaluate the weight and credibility of the evidence, and we do not substitute our
own judgment for the trier of fact. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000) (en banc); Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.]
2000, pet. ref'd). Instead, we consider whether the jury reached a rational decision. 
Beckham, 29 S.W.3d at 151.

 In a factual sufficiency review, we view all of the evidence in a neutral light in order
to determine whether a jury was rationally justified in finding guilt beyond a reasonable
doubt. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). The evidence
is factually insufficient if: (1) it is so weak that it is clearly wrong and manifestly unjust, or
(2) the jury's verdict is against the great weight and preponderance of the available
evidence. Id. To reverse a jury's verdict as being supported by factually insufficient
evidence, we must be able to say with some objective basis in the record that the great
weight and preponderance of the evidence contradicts the jury's verdict. Id. at 417.

 The jury is the sole judge of the facts, the credibility of the witnesses, and the weight
given to testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979). And
"[a]lthough authorized to disagree with the jury's determination even if probative evidence
exists which supports the verdict, a reviewing court must give due deference to the fact
finder's determinations . . . and will reverse the fact finder's determination only to arrest the
occurrence of a manifest injustice." Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim.
App. 2003). 

 Both legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997). Under a hypothetically correct jury charge, a person commits the
offense of third-degree felony theft if she "unlawfully appropriates property with intent to
deprive the owner of the property" and "the value of the property stolen is $20,000 or more
but less than $100,000 . . . ." Tex. Penal Code Ann. § 31.03(a), (e)(5); see King v. State,
174 S.W.3d 796, 809 (Tex. App.-Corpus Christi 2005, pet. ref'd). Here, the
"[a]ppropriation of property [would be] unlawful if . . . it is without the owner's effective
consent." Tex. Penal Code Ann. § 31.03(b)(1). "The intent to deprive is determined from
the words and acts of the [defendant]." King, 174 S.W.3d at 810 (citing Griffin v. State,
614 S.W.2d 155, 159 (Tex. Crim. App. 1981)). 

 "Appropriate" is defined as "acquir[ing] or otherwise exercis[ing] control over
property other than real property." Tex. Penal Code Ann. § 31.01(4)(B) (Vernon 2003). 
"Deprive means . . . to withhold property from the owner permanently or for so long a
period of time that a major portion of the value or enjoyment of the property is lost to the
owner . . . ." Id. at § 31.01(2)(A). The "owner" of the property is the person with the
superior right to possession over the defendant; "'[p]ossession' means actual care,
custody, control, or management." Id. at §§ 1.07(a)(35)(A), (a)(39) (Vernon 2003). The
owner's consent is not effective if it is "induced by deception . . . ." Id. at § 31.01(3)(A). 
"Deception" is defined as "creating or confirming by words or conduct a false impression
of law or fact that is likely to affect the judgment of another . . . and that the [defendant]
does not believe is true. Id. at § 31.01(1)(A). 

DISCUSSION

 In six issues, Washington contends that the State's evidence was legally and
factually insufficient to prove her guilty of third-degree felony theft beyond a reasonable
doubt. (4) Washington's first, second, and third issues challenge the evidence regarding her
requisite criminal intent to deprive and deceive. Washington's fourth, fifth, and sixth issues
challenge the evidence of permanent deprivation and major loss of enjoyment and value. 

A. Criminal Intent and Deception

 First, Washington contends her guilty verdict was supported by both legally and
factually insufficient evidence because she believed she was part-owner of Texas
Computerized Tax Service and could, therefore, bind the business to a contract. 
Washington challenges the sufficiency of the State's evidence to prove, beyond a
reasonable doubt, Washington's (1) criminal intent to deprive Aguirre of the Durango, and
(2) deception, specifically, that she did not believe the false fact that she was part-owner
of TCTS, a fact that affected Aguirre's judgment in selling her the Durango. See Tex.
Penal Code Ann. §§ 31.01(1)(A), 31.03(a). 

 1. Legal sufficiency (5)

 It is undisputed that Washington signed Kiker's name to the Durango purchase
documents she returned to Ed Payne Motors and that she had personal, detailed
knowledge of Kiker's weakened and fragile physical condition. The undisputed evidence
also shows that no corporate paperwork had been completed regarding the alleged
transfer of TCTS ownership to Washington. Finally, it is undisputed that Washington has
over a decade of experience in the tax preparation business and, up until the time he
learned of the forgeries, Kiker considered Washington a loyal, trustworthy, and
knowledgeable employee. 

 Kiker testified emphatically that, although he had made the offer of forty-nine
percent ownership to Washington, he had no present intent to convey ownership to her at
the time of the offer; Kiker insisted that he and his wife were the sole owners of TCTS. 
There was also testimony by an investigating police officer that Kiker had informed him that
the ownership offer was merely a "thought" in Kiker's mind and that Kiker did not believe
he had given partial ownership of TCTS to Washington. 

 Kiker further testified that Washington never informed him that she bought a vehicle
at Ed Payne Motors as a business purchase. Kiker stated in his testimony that, when he
first saw Washington with the Durango, Washington's expression was that of a "deer
caught in the headlights." Kiker testified that, when Washington finally came to tell him
about the Durango, she tried to convince him that he had authorized the purchase. 

 Aguirre testified that Washington had done his taxes in the past and that he
considered TCTS a reputable business. Washington acknowledged that she had
previously done business with Aguirre; she had prepared his taxes and had bought a car
from him in 2001. Aguirre testified that it was Washington's idea to buy the Durango as
a business purchase after Washington was denied financing for a personal purchase. An
investigating police officer further testified that Aguirre told him that, although Ed Payne
Motors offered to send the purchase documents directly to Kiker for his signature,
Washington insisted on taking the paperwork herself. 

 On appeal, Washington claims there was legally insufficient evidence of (1) her
criminal intent to deprive Aguirre of the Durango, and (2) deception, specifically, that she
did not believe the false fact that she was part-owner of TCTS her non-belief, a fact that
affected Aguirre's judgment in selling her the Durango. However, based on the evidence
presented at trial, a rational jury could have concluded that: Washington admitted to
forging Kiker's signature; Washington was without authority to make a business purchase
because she was not partial owner of TCTS; Washington did not believe she was a partial
owner of TCTS because she was an experienced businessperson who knew that no
corporate paperwork had ever been completed to effectuate the transfer of ownership;
Washington did not believe she was a partial owner of TCTS because she acted
suspiciously when Kiker discovered the car, because she tried to pressure Kiker to admit
he had authorized the purchase when she knew he was in poor health, and because she
insisted on taking the purchase documents herself rather than allowing the dealership to
send them directly to Kiker for his signature; Washington misrepresented her ownership
of TCTS to Aguirre after she had been denied financing for a personal purchase; and
Washington knew Aguirre would accept her false representation because Aguirre believed
TCTS was a reputable business and had done business with Washington in the past. 

 The "jury may infer intent from any facts which tend to prove its existence . . . ." 
King, 174 S.W.3d at 811. And we look to "events occurring before, during and after the
commission of the offense and may rely on actions of the defendant which show an
understanding and common design to do the prohibited act." Guevara v. State, 152
S.W.3d 45, 49 (Tex. Crim. App. 2004). We conclude that the "combined and cumulative
force" of the above evidence was sufficient to permit the jury to reach a rational decision. 
See King, 174 S.W.3d at 811. Viewing the evidence in the light most favorable to
conviction, we hold that there was legally sufficient evidence to prove beyond a reasonable
doubt that Washington had the requisite intent to deprive Aguirre of the Durango and did
not believe the false fact of her co-ownership of TCTS. See Hooper, 214 S.W.3d at 13. 
Washington's second and third issues are overruled. 

 2. Factual sufficiency

 In our factual sufficiency review, we view the evidence neutrally. See Watson, 204
S.W.3d at 414-15. So, in addition to the verdict-favorable evidence on which we relied in
our legal sufficiency analysis, we will also consider evidence favorable to Washington. See
id. At trial, Washington produced, as an exhibit, her termination letter, in which Kiker
withdrew his offer to give Washington forty-nine percent of TCTS. Washington testified
that, when she purchased the Durango from Aguirre, she believed she owned forty-nine
percent of the business because she had performed the consideration of remaining as an
employee of TCTS. Washington further testified that she had always signed documents
for Kiker in the past and had told Kiker of her intent to purchase a car for the business. 
Washington stated in her testimony that she continued to work for Kiker even after he
learned she had forged his signature. Washington also claims that there were
inconsistencies in Aguirre's and Kiker's testimony, which negates their credibility; in fact,
she claims that Aguirre and Kiker perjured themselves at trial. Washington argues that this
evidence proves she could not have had the requisite intent to deprive and did not deceive
Aguirre because she believed the purchase of the Durango was a business transaction she
had the power to authorize.

 Nonetheless, even viewing the evidence in a neutral light, we cannot say the verdict
was clearly wrong or manifestly unjust. See Watson, 204 S.W.3d at 414-15. The evidence
presented by Washington was contradicted by the State's testimony and evidence. Kiker
vehemently denied conveying partial ownership to Washington and stated that he never
gave Washington permission to sign any documents in his name. See Beckham, 29
S.W.3d at 151-52 (holding that conflicts in testimony "do not destroy the sufficiency of the
evidence" and that it is the exclusive duty of the jury to resolve contradicting evidence and
testimony). We, furthermore, refuse to conclude that Aguirre and Kiker provided false
testimony. Witnesses are well within bounds to adjust their testimony during questioning
to clarify a prior answer; mere discrepancies in testimony do not amount to perjury. See
Tex. Penal Code Ann. § 37.02 (Vernon 2003) (stating that perjury requires a "false
statement under oath" made with the "intent to deceive"); Tex. Code Crim Proc. Ann. art.
38.04 (stating that the jury is the sole judge of, among other things, the credibility of
witnesses). Washington also claims her continued work for Kiker, after his discovery of the
forgeries, proves Kiker continued to trust her and that she had nothing to hide. However,
based on this fact alone, we refuse to disturb the jury's verdict; it was neither clearly wrong
nor manifestly unjust. See Swearingen, 101 S.W.3d at 97 (ruling that "the reviewing court
must give due deference to the fact finder's determinations concerning the weight and
credibility of the evidence"). There was ample evidence for the jury to find that Washington
intended to deprive Aguirre of the Durango and did not believe the false fact that she was
a partial owner of TCTS, and we find no objective basis in the record to conclude
otherwise. See Watson, 204 S.W.3d at 414-15. Washington's first issue is overruled.

B. Permanent Deprivation and Major Loss of Enjoyment or Value

 Second, Washington challenges the legal and factual sufficiency of the State's
evidence of permanent deprivation and major loss of enjoyment or value. Washington
contends her guilty verdict was supported by neither legally nor factually sufficient evidence
to prove beyond a reasonable doubt that she permanently withheld property from Aguirre
or held the property for so long a period of time that a major portion of the value or
enjoyment of the property was lost to Aguirre. See Tex. Penal Code Ann. § 31.01(2)(A).

 Washington's main argument regarding this issue is that the State produced
insufficient evidence of deprivation because Aguirre was not the actual owner of the
Durango. Washington claims that Ed Payne Motors was the entity that suffered the
deprivation and that there was no evidence that Aguirre personally experienced any
deprivation or loss. Washington's argument misses the mark. 

 For purposes of theft, the "owner" is a person who has "a greater right to possession
[of the stolen property] than the [defendant]." See Tex. Penal Code Ann. § 1.07(a)(35)(A)
(Vernon 2003). When the victim of a crime is a corporation, it is the standard and better
practice for the indictment to allege special ownership in a natural person. Simpson v.
State, 648 S.W.2d 1, 2 (Tex. Crim. App. 1983); see, e.g., Jackson v. State, 270 S.W.3d
649, 656-57 (Tex. App.-Fort Worth 2008, pet. ref'd); Ray v. State, 106 S.W.3d 299, 301
(Tex. App.-Houston [1st Dist.] 2003, no pet.); Harris v. State, 986 S.W.2d 619, 625 (Tex.
App-Tyler 1997, pet. ref'd). A car salesman, in particular, has been held as the proper
natural person in which to allege special ownership. See Jackson, 270 S.W.3d at 657. 
Here, Aguirre, as a salesman for Ed Payne Motors, had a greater right to possession of the
Durango than Washington and was, therefore, an appropriate person to be named as
victim in the indictment. (6) See id. 

 Concluding that Aguirre was the proper party to be alleged as victim, we proceed
to Washington's argument that the State produced insufficient evidence to prove
permanent deprivation or a major loss of a portion of value or enjoyment of the property. 
At the outset, we must note that the State was not required to prove actual deprivation in
order to prove Washington's intent to deprive Aguirre; in other words, the deprivation
element necessary to prove the offense of theft requires only an intent to deprive, not
actual deprivation. (7) Rowland v. State, 744 S.W.2d 610, 612 (Tex. 1988) (en banc). As
previously discussed, the State adduced both legally and factually sufficient evidence to
prove, beyond a reasonable doubt, Washington's intent to deprive Aguirre of the Durango.

 Regardless, we find the following evidence in the record supporting a finding of loss: 
an exhibit demonstrating that the original sale price of the Durango was $38,549.00;
testimony that the Durango was resold for $24,900.00 when Washington returned the
vehicle to Ed Payne Motors after only three months use; testimony that the
Durango--purchased new only three months earlier--was returned to Ed Payne Motors
in a state of serious disrepair; testimony that the difference between the original price and
re-sale price was roughly $12,000.00; testimony that, after subtracting the add-ons and
down payment from Washington, the actual loss to the dealership was roughly $7,500.00. 

 Washington argues in her brief that the testimony regarding loss was conclusory. 
She contends that, because there was no testimony on dealer mark-ups, fair market
values, sales commissions, and rebates, there was insufficient evidence to prove that
$7,500.00 was a major loss. However, Washington provides no authority, and we find
none, in support of her argument that such testimony is needed. 

 Based on this evidence and reviewing the record in a light most favorable to
conviction, we conclude that a rational jury could have found this amount to be the loss of
a major portion of value or enjoyment to Aguirre, who was standing in the shoes of Ed
Payne Motors. See King, 174 S.W.3d at 811; see also Thomas v. State, No.
13-00-157-CR, 2001 WL 34389007, at *3 (Tex. App.-Corpus Christi Aug. 23, 2001, no
pet.) (holding that the victim lost a major portion of the value of her car where the
defendant drove it for seven months and returned it in a damaged condition). The
evidence of loss was, therefore, legally sufficient, and we overrule Washington's fifth and
sixth issues. 

 Moreover, we conclude that the evidence was factually sufficient. Absent any
contrary evidence in the record, we will not substitute our judgment for that of the jury,
which made its own decision at trial regarding the credibility of the witnesses and weighing
of the evidence, and cannot conclude that the verdict was clearly wrong or manifestly
unjust. See King, 29 S.W.3d at 563. We find no objective basis in the record to hold that
the Durango was not permanently withheld from Aguirre or that a major portion of the value
or enjoyment of the Durango was not lost to Aguirre. See Watson, 204 S.W.3d at 414-15. 
Washington's fourth issue is overruled.

CONCLUSION

 We affirm.

 NELDA V. RODRIGUEZ

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 16th day of July, 2009.
1. In the record, Texas Computerized Tax Service is referred to interchangeably as Texas
Computerized Tax Service and Weslaco Tax Service. For clarity's sake, the Court will refer to the business
as Texas Computerized Tax Service or TCTS throughout this opinion. Tex. R. App. P. 47.1.
2. The record contains conflicting testimony regarding the exact date of the discussion. The State
presented evidence that the discussion took place at Kiker's home, after he returned from the hospital. 
Washington testified that Kiker made the offer to her on one of her visits while he was still in the hospital.


 Other facts regarding the content and tone of the conversation are also in dispute. Washington
contends that, in the discussion, Kiker offered her forty-nine percent ownership of the business in exchange
for her promise to stay with TCTS; Washington claims she accepted on the spot and tendered her
consideration by remaining employed with TCTS. Kiker contends, however, that he did not intend to convey
ownership to Washington at the time of the discussion; Kiker claims that his offer to her was intended to be
for the future. 
3. Washington contends that Aguirre encouraged her to purchase the Durango as a business
transaction and indicated that it was acceptable for Washington to sign Kiker's name to the purchase
documents. Aguirre denies that he encouraged Washington or told her that she could sign for Kiker, instead
testifying that, after Washington had been denied financing for a personal purchase, she suggested that they
finance the Durango as a business purchase because she was a partial owner of TCTS. 
4. Washington's legal sufficiency challenges (her second, third, fifth, and sixth issues) state that
Washington's rights under article I, sections thirteen and nineteen of the Texas Constitution and the
Fourteenth Amendment of the United States Constitution were violated because of the use of legally
insufficient evidence. See U.S. Const. amend. XIV, § 1; Tex. Const. art. I, §§ 13, 19. However, the Texas
Constitution and Fourteenth Amendment do not create separate and distinct legal sufficiency issues. Rather,
legal sufficiency review was born out of due process considerations, and by naming the United States and
Texas due process clauses in her issues, we conclude that Washington has done no more than cite the legal
background of the evidentiary sufficiency principle. See Jackson, 443 U.S. at 314, 317-19; Watson, 204
S.W.3d at 412; Swearingen, 101 S.W.3d at 95. Because the same law applies to all four legal sufficiency
issues, we will analyze Washington's second and third issues as one issue and fifth and sixth issues as one
issue. See Tex. R. App. P. 47.1.
5. Washington claims we must address whether this case is actually civil, as opposed to criminal, in
nature as a threshold issue. We disagree. It is undoubtedly important that a court distinguish between cases
arising out of criminal activity and cases arising out of mere contractual disputes. See Christensen v. State,
240 S.W.3d 25, 32 (Tex. App.-Houston [1st Dist.] 2007, pet. ref'd); see also Reed v. State, No. 13-05-364-CR,
2008 Tex. App. LEXIS 2188, at *5-6 (Tex. App.-Corpus Christi Mar. 27, 2008, no pet.). Indeed, a charge of
theft made in connection with a contract requires proof of more than an intent to deprive the owner and
appropriation of the property. See Jacobs v. State, 230 S.W.3d 225, 229 (Tex. App.-Houston [14th Dist.]
2006, no pet.). However, Christensen, Jacobs, and Reed all involved a contractual dispute-turned-crime
between the defendant and victim alleged in the indictment. See Christensen, 240 S.W.3d at 32-34; Jacobs,
230 S.W.3d at 227-28; Reed, 2008 Tex. App. LEXIS 2188, at *1-2. In this case, the theft charges against
Washington do not arise from a contract between Aguirre, the victim, and Washington, the defendant. Rather,
the contract at issue is the alleged transfer of ownership of TCTS from Kiker to Washington. Here, whether
or not a contract was formed between Kiker and Washington and the parties' beliefs regarding contract
formation are merely evidence of Washington's intent to deprive and deceive Aguirre. We, therefore, overrule
Washington's second and third issues to the extent they involve her claim that we must make a threshold
determination on the criminal versus civil question.
6. Washington also contends that there was a fatal variance in the indictment, which alleged Aguirre
as owner, because the State did not prove any loss to Aguirre at trial. As discussed above, it is standard
pleading practice to allege special ownership in a person when the victim is a corporation. See Simpson v.
State, 648 S.W.2d 1, 2 (Tex. Crim. App. 1983); Harris v. State, 986 S.W.2d 619, 625 (Tex. App-Tyler 1997,
pet. ref'd). The special person essentially stands in the shoes of the corporation. So, any loss proven as to
the corporation is also a loss proven to the special person alleged in the indictment. See, e.g., Ray v. State,
106 S.W.3d 299, 301 (Tex. App.-Houston [1st Dist.] 2003, no pet.). 

 

 In Simpson, the court held that the proof was at variance with the indictment because, even though
the indictment alleged special ownership in a person, there was no testimony showing that person had a
greater right to possession of the stolen property. See Simpson, 648 S.W.2d at 2. Here, by contrast, there
was testimony proving that Aguirre had a greater right to possession of the Durango than Washington. 
Aguirre testified that he had the right to take the cars out for test drives without any supervision or special
permission from the dealership; he testified that this was the normal course of business for salespersons at
Ed Payne Motors. Washington, however, was not allowed to take cars out for test drives without permission;
rather, it was required that she be accompanied at all times by a salesperson or other employee of Ed Payne
Motors. Based on this testimony, we conclude that Aguirre had a greater right to possession than
Washington, and we overrule Washington's fifth and sixth issues in so far as they relate to her fatal variance
argument.
7. Even though the State was not required to prove that Washington actually deprived Aguirre of the
Durango, the State was nonetheless required to prove that Washington appropriated the Durango, which
required a showing that Washington "acquire[d] or otherwise exercise[d] control over [the] property." See Tex.
Penal Code Ann. § 31.01(4)(B). However, Washington does not challenge whether the State proved the
element of appropriation so we need not address it here.