

# IN THE
# TENTH COURT OF APPEALS

No. 10-09-00062-CR
No. 10-09-00063-CR

**P. DAVID ROMEI,**

Appellant

 **v.**

**THE STATE OF TEXAS,**

Appellee

**From the 361st District Court
Brazos County, Texas
Trial Court Nos. 07-04489-CRF-361 and 07-04491-CRF-361**

## MEMORANDUM OPINION

In Cause No. 10-09-00062-CR, the jury convicted David Romei of theft of property with a value $1500 or more but less than $20,000. TEX. PENAL CODE ANN. § 31.03 (Vernon Pamph. 2010). The jury assessed punishment at 2 years in prison and a $5000 fine. Imposition of the sentence was suspended, and Romei was placed on community supervision for 5 years. Romei was also ordered to pay $268,000 in restitution. In Cause No. 10-09-00063-CR, the jury convicted Romei of misapplication of fiduciary property with a value $500 or more but less than $1500. TEX. PENAL CODE ANN. § 32.45 (Vernon Pamph. 2010). The jury assessed punishment at a $750 fine only.

We affirm Cause No. 10-09-00062-CR, and we reverse the judgment in Cause No. 10-09-00063-CR and remand for a new trial.

## Cause No. 10-09-00062-CR

Romei brings four issues on appeal in Cause No. 10-09-00062-CR challenging the legal sufficiency of the evidence. In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Furthermore, we must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a legal sufficiency review. *Clayton v. State*, 235 S.W.3d at 778; *Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing an actor's guilt. *Clayton v. State*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**Facts**

David Romei served as executive director of the Arts Council of Brazos Valley. The Arts Council had a contract with the City of College Station that included a funding agreement. Any changes to the contract were required to be in writing by a formal change order.

The Arts Council commissioned many outdoor art exhibits including a firefighter

statue. Romei testified that Tom Brymer, City Manager for College Station, approached him about providing lights for the firefighter statue so that it would be more visible at night. Romei himself estimated the cost of installing the lights to be $7400 and gave that amount to Brymer as the cost of the job. The City of College Station prepared a written change order on November 16, 2004 for the lighting improvements on the firefighter statue in the amount of $7400.

On December 1, 2004, the City of College Station sent the money to the Arts Council by wire transfer as part of a previously scheduled payment. The Arts Council received the payment of $7400 that day from the City of College Station, and the funds were recorded as miscellaneous income for consulting services. Also on that day, the Arts Council issued Romei a check for $7400. The check was paid out of the miscellaneous income account and recorded as a consulting fee paid by College Station as personal income for Romei.

Britt Rice, an electrical contractor, testified that he met with Romei on April 11, 2005 to discuss the lighting for the firefighter statue. Rice completed the installation of the lights in April 2005. Rice did not bill the Arts Council for the job, but provided the parts and labor free of charge. Rice stated that had he billed the Arts Council for the job, the cost would have been $421.

Romei testified that before the City of College Station transferred the money to the Arts Council, he knew that Rice was not going to charge for the lighting project. Romei learned that the city of College Station had paid a $10,000 consulting fee to another person, and he felt that he had been "used" by the city because he had

provided numerous hours of his time free of charge. Romei contacted Brymer and told him Rice was not going to charge for the project. Romei testified that he asked Brymer if he could keep the $7400 as a personal consulting fee. Romei stated that Brymer had "no problem" with Romei keeping the funds. Romei instructed his chief of staff, Amie McCoy, to record the money as a consulting fee and issue Romei a check for $7400.

Brymer testified at trial that it was his idea to have lights installed on the firefighter statue. Brymer said that he asked Romei about the lights, and Romei said it would be expensive. Brymer asked Romei to get an estimate and process a change order for the lights. Brymer testified that he understood the $7400 was to be used for lighting and that there was no other agreement between him and Romei as to the use of the money.

Brymer further testified that the City of College Station had numerous committees with citizens of the community serving on those committees as volunteers. Romei was on the City Center Committee. Romei was a volunteer on the committee and not paid to serve.

Netta Simek, previous board member and president of the Arts Council, testified that she was not aware Romei received the consulting fee from the City of College Station or that he was employed by the city as a consultant.

**Theft By Deception**

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (Vernon Pamph. 2010). Appropriation of property is unlawful if it is without the owner's effective

consent. Tex. Penal Code Ann. § 31.03(b)(1) (Vernon Pamph. 2010). Consent is not effective if it is induced by deception. Tex. Penal Code Ann. § 31.01(3)(A) (Vernon Pamph. 2010). Deception means:

> (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;
> (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;
> (C) preventing another from acquiring information likely to affect his judgment in the transaction;
> (D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or
> (E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

Tex. Penal Code Ann. § 31.01(1)(A)-(E) (Vernon Pamph. 2010).

The indictment alleged that Romei committed theft by deception in that he represented that $7400 was needed for lighting for a firefighter statue when it was in fact for his personal use. Romei argues in his first issue on appeal that the evidence is insufficient to show that the owner's consent was induced by deception. Romei argues in his second issue on appeal that the evidence is insufficient to prove intent to commit theft by deception due to Romei's performance under the contract.

Romei argues that this is a claim of theft arising out of a contract dispute that requires proof of more than an intent to deprive the owner of property and the

subsequent appropriation of property. Romei states that a claim in connection with a contract requires proof of the false pretext of fraud to become criminal conduct. Romei cites *Jacobs v. State*, 230 S.W.3d 225, 230 (Tex. App.—Houston [14th Dist] 2006, no pet.) stating that the critical distinction between conduct that is criminal versus civil in nature is whether the record shows deception and not merely a failure to perform. If a contract is partially or substantially performed, then intent to commit theft through deception is not shown by the evidence. *Jacobs v. State*, 230 S.W.3d at 231.

Romei represented to the City of College Station that installing lights on the statue would cost $7400. The estimate was based upon Romei's experience and not that of an electrical contractor. Based upon Romei's representation, the City of College Station executed a change order for $7400 that was specifically designated for the installation of lights on the statue. Romei testified that before the City of College Station transferred the money pursuant to the change order, he knew that the electrical contractor was providing the service free of charge and that $7400 was not needed for the lighting project. Romei testified that Brymer, as a representative for the City of College Station, agreed that Romei could keep the money as a consulting fee. Brymer testified that he and Romei did not have any other agreement about the money and that he did not remember having a conversation with Romei about a consulting fee. Brymer understood that the $7400 was spent on lighting for the statue.

The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight given to testimony. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). A jury is entitled to accept one version of the facts and reject another and to

reject any part of a witness's testimony. *See id*.

There is no dispute that the City of College Station wanted lights for the firefighter statue and entered into a contract with Romei as executive director of the Arts Council to obtain the lights. There is no dispute that lights were installed at the firefighter statue several months after the change order was entered. Unlike *Jacobs* this is not an issue of failure to perform.

There is sufficient evidence to show that Romei obtained $7400 from the City of College Station by deception. Romei represented that $7400 was necessary to install lights for the statue; however, at the time of the transfer of the $7400, Romei knew the money was not to be used for its designated purpose. Romei instructed his staff to designate the $7400 as a consulting fee and to issue Romei a personal check from an income account rather than an expense account. The designation in effect concealed the transaction from the Arts Council board of directors. The City of College Station gave the money to the Arts Council for the use of the Arts Council and not for Romei's personal compensation. The City of College Station was unaware the money was for Romei's personal compensation. We overrule Romei's first and second issues on appeal.

**Consent**

Romei argues in his third issue on appeal that the evidence is insufficient to show that Brymer did not consent to Romei keeping the $7400 as a consulting fee. Romei states in his brief that Brymer's inability to remember whether he authorized a consulting fee renders the evidence legally insufficient.

On cross-examination, Romei's attorney questioned Brymer extensively about his conversation with the district attorney's investigator. Brymer told the investigator that he did not remember a conversation with Romei authorizing Romei to keep the $7400 as a consulting fee rather than its designated purpose of lighting for the firefighter statue. Brymer testified on direct examination that the $7400 was to be spent for lighting and that there was no other agreement between himself and Romei for the use of the money.

Any changes to the contract between the Arts Council and the City of College Station were required to be in writing in a formal change order. Romei did not submit a bill for consulting services to the City of College Station, and there is no written change order authorizing the funds for that use. Romei contends that he and Brymer had an oral agreement allowing him to keep the $7400 as a consulting fee. Brymer testified that there was no other agreement for the use of the funds. The jury was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Adelman v. State*, 828 S.W.2d at 421. The jury may choose to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d at 614. The evidence is sufficient to show that Romei appropriated the money without consent of the owners. We overrule Romei's third issue.

**Contractual Relationship**

In his fourth issue, Romei argues that the evidence is legally insufficient to show that he was in a contractual relationship with the government. Theft of property with a value of $1500 or more but less than $20,000 is a state jail felony. TEX. PENAL CODE ANN. § 31.03(e)(4)(A) (Vernon Pamph. 2010). The penalty range is increased to the next

higher category of offense if it is shown that the actor was in a contractual relationship with the government at the time of the offense and the property appropriated came into the actor's custody, possession, or control by virtue of the contractual relationship. TEX. PENAL CODE ANN. § 31.03(f)(2) (Vernon Pamph. 2010).

Romei contends that the Arts Council and the City of College Station have a contractual relationship and that his only relationship to those parties was his status as an employee of the Arts Council. Romei maintains that the contract and change order in question were between the Arts Council and the City of College Station.

The Arts Council is a Texas nonprofit corporation. Romei served as executive director of the Arts Council. An individual is criminally responsible for conduct that he performs in the name of or in behalf of a corporation or association to the same extent as if the conduct were performed in his own name or behalf. TEX. PENAL CODE ANN. § 7.23(a) (Vernon 2003).

Romei signed funding agreements between the Arts Council and The City of College Station on behalf of the Arts Council. Romei signed the change order authorizing the $7400 to install lights on the firefighter statue on behalf of the Arts Council. We find the evidence is sufficient to support a finding that Romei was in a contractual relationship with the government. We overrule Romei's fourth issue on appeal.

### Cause No. 10-09-00063-CR

Romei brings two issues on appeal for his conviction of misapplication of fiduciary property. Romei argues that the evidence is legally insufficient to support his

conviction and also that his misdemeanor conviction is barred by the statute of limitations.

Romei was convicted of misapplication of fiduciary property in trial court Cause No. 07-04491-CRF-361. For that cause number, the jury assessed Romei's punishment at a $750 fine, and the trial court imposed the sentence on January 12, 2009. Romei was convicted of theft in trial court Cause No. 07-04489-CRF-361. At the sentencing hearing, the trial court stated that for trial court Cause No. 07-04489-CRF-361, Romei would be assessed a fine of $750 and that payment was a condition of felony community supervision. Romei paid the fine and court costs the day after sentencing, but prior to filing his notice of appeal.

**Mootness**

The State has filed a motion to dismiss this appeal for lack of jurisdiction because it contends that when Romei voluntarily paid the $750 fine, the sentence was discharged and therefore, there was nothing from which to appeal. Upon pronouncing sentence against Romei, the trial court stated that the payment of the fine would be a condition of his community supervision for the felony offense. The trial court indicated weeks later that it was not its intent that the fine be made a condition of his felony community supervision; however, the oral pronouncement was clear even if it was not what the trial court intended.

A trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is the written declaration and embodiment of that oral pronouncement. TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1 (West 2006); *see Ex parte*

*Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002). When the court's written judgment diverges from the court's oral pronouncement of sentence, the oral pronouncement controls. *Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998) (because oral pronouncement of sentence is the appealable event, no deviations in the written judgment can supersede the sentence pronounced in open court). Because the trial court's oral pronouncement of sentence made the payment of the fine a condition of his felony community supervision, the appeal of the conviction is not moot.

**Misapplication of Fiduciary Property[1]**

Romei was indicted for the felony offense of misappropriation of fiduciary property of $1500 or more but less than $20,000 on August 23, 2007. The State alleged four separate incidents which it sought to aggregate to reach the felony amount. Three political contributions were made to separate individuals, each in the amount of $250, on or about May 10, 2002. A fourth incident was alleged for a political contribution made on or about October 19, 2005 in the amount of $1000. The jury did not find Romei guilty of the aggregated felony offense but did find him guilty of the lesser-included offense of misapplication of fiduciary property in an amount of $500 or more but less than $1500. Both of Romei's complaints about this conviction are based on his argument that the three $250 contributions constituted one criminal act and therefore must be considered as an aggregated total of $750, not three separate contributions of $250.

---

[1] We are required to address the sufficiency of the evidence complaint because, if it is sustained, acquittal is required, which is greater relief than a reversal and remand for a new trial. *See Nickerson v. State*, 69 S.W.3d 661, 668 (Tex. App.—Waco 2002, pet. ref'd); *see also Hernandez v. State*, 268 S.W.3d 176, 178 (Tex. App.—Corpus Christi 2008, no pet.).

Romei complains in his first issue in trial court Cause No. 07-04489-CRF-361 that the evidence was legally insufficient for the jury to have determined that there was more than a single allegation of misapplication or one continuous scheme or course of conduct. Romei contends that the three $250 contributions together constituted a single allegation because he sought reimbursement for them jointly and that the 2005 contribution constituted a single allegation and, because the felony offense required a continuous scheme or course of conduct, neither could stand alone pursuant to the trial court's charge. Thus, he contends that because the jury found him guilty of the misdemeanor offense and not the felony offense, the evidence is then necessarily legally insufficient for the jury to have found him guilty as there could not have been a combination of misapplications or the jury would have convicted him of the felony offense.

Pursuant to section 32.45 of the Penal Code, the elements for misapplication of fiduciary property are (1) the defendant, (2) intentionally, knowingly, or recklessly, (3) misapplies, (4) property he holds as a fiduciary or property of a financial institution, (5) in a manner that involves substantial risk of loss, (6) to the owner of the property or to a person for whose benefit the property is held. TEX. PENAL CODE ANN. § 32.45(b) (West 2010). Section 32.03 provides that "[w]hen amounts are obtained … pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of offense." TEX. PENAL CODE ANN. § 32.03 (West 2010).

Section 32.03 creates a separate offense of aggregate misapplication of fiduciary

property, similar to section 31.09 which creates a separate offense for aggregate theft. *See generally Montgomery v. State*, 91 S.W.3d 426, 430 n.2 (Tex. App.—Eastland 2002, pet. ref'd) (aggregation for fraud pursuant to section 32.03 compared with aggregation for theft pursuant to section 31.09); *Dickens v. State*, 981 S.W.2d 186, 188 (Tex. Crim. App. 1998) (en banc) (aggregated theft).

In determining whether section 31.09 creates a separate offense from each theft, the Court of Criminal Appeals held in *Dickens* that "[a]ggregated theft is the sum of all of its parts. A part is a completed theft whose elements have all been proven. The amount obtained in each part may be aggregated in determining the grade of the one aggregated offense." *Dickens*, 981 S.W.2d at 188.

Each of the four offenses alleged a separate act of misappropriation pursuant to section 32.45, which were presented to the jury as lesser-included offenses of the aggregated misapplication of fiduciary property. The charge allowed the jury to find Romei guilty of each offense individually or by aggregating the amounts if the jury determined that the misapplications were committed pursuant to one scheme or continuing course of conduct in whatever total amount of the lesser offenses of which it determined Romei was guilty. The jury found Romei guilty of a lesser-included offense.

Romei contends that the jury could not have found him guilty of the 2005 contribution and less than all of the 2002 contributions, which would have reached the aggregate amount required to convict him of the felony. He also contends that the 2002 contributions constituted one misapplication only, and therefore there could be no

continuous scheme or course of conduct since the jury found him guilty of the misdemeanor offense. However, Romei does not challenge the legal sufficiency of the evidence as to each offense individually, but solely as it relates to section 32.03 for purposes of aggregation.

We find that the evidence was legally sufficient for the jury to have determined that Romei committed each of the offenses individually. Romei admitted to making the 2002 contributions as well as the $1000 reimbursement for the 2005 contribution. The charge was a general charge and, as more fully discussed in the harm analysis for Romei's second issue below, it is therefore impossible to determine which offense or combination of offenses the jury convicted him of. But, we cannot say that the evidence was legally insufficient on any of the four offenses alleged. We overrule issue one.

**Denial of Jury Instruction on the Statute of Limitations**

In his second issue, Romei complains that the trial court abused its discretion by refusing to submit an instruction to the jury on the statute of limitations. Romei filed a pretrial motion to dismiss pursuant to article 27.08(2) of the Code of Criminal Procedure, arguing that the three incidents in 2002 were outside of the statute of limitations. Romei's motion to dismiss was denied. At trial, there was testimony that the three contributions were made in 2002, as alleged in the indictment. There was also testimony regarding the contribution in 2005. Romei requested an instruction regarding the statute of limitations in the jury charge, which the judge denied. The jury acquitted Romei of the greater offense, but convicted him of the lesser-included offense of misapplication of fiduciary property of $500 or more but less than $1,500, a

misdemeanor.

While Romei was indicted within the statute of limitations for the felony offense of misappropriation, it is undisputed that the three contributions of $250 were made more than two years prior to Romei's indictment, which is outside of the statute of limitations for a misdemeanor offense. TEX. CODE CRIM. PROC. ANN. art. 12.01, 12.02 (West 2003). However, the 2005 contribution was within the statute of limitations.

We find that the trial court abused its discretion by refusing to instruct the jury on the statute of limitations because there was some evidence that some of the conduct made the basis of the indictment and jury charge occurred outside of the applicable statute of limitations for misdemeanor offenses. *See Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). When, as here, a timely objection is made, error in the jury charge requires reversal if the error caused "some harm." *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id*.

Using this standard, we find that the failure to include the instruction resulted in "some harm" to Romei because although the jury charge was generally unexceptional, the evidence and arguments proffered certainly emphasized conviction of the 2002 offenses, perhaps more strongly than of the 2005 offense. The jury could have determined that Romei was guilty only of the 2005 offense or it could also have

determined that Romei was guilty of two or more of the 2002 offenses or some combination thereof. Because we find that Romei was harmed, we sustain this issue, and will remand this cause to the trial court for a new trial on the offense of misapplication of fiduciary property in an amount of $500 or more but less than $1,500.

## Conclusion

We affirm Romei's conviction in Cause No. 10-09-00062-CR. We reverse the conviction in Cause No. 10-09-00063-CR and remand that cause to the trial court for a new trial.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed in part, Reversed and remanded in part
Opinion delivered and filed February 23, 2011
Do not publish
[CR25]