**1233·14**

No. PD-1233-14

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

DONNA GAYLE HOLCOMB

*Petitioner,*

V.

THE STATE OF TEXAS

*Respondent.*

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 3 0 2015

Abel Acosta, Clerk

---

## PETITION FOR DISCRETIONARY REVIEW

---

On Petition for Discretionary Review from the Court of Appeals for the
First District, Houston, Texas in Cause No. 01-08-00337-CR,
Affirming the Conviction from the 230th District Court of
Harris County, Texas in Cause No. 1141352

---

Donna Gayle Holcomb
4906 Scott Reef Dr.
Bacliff, Texas 77518

**Petitioner, Pro Se**

FILED IN
COURT OF CRIMINAL APPEALS

APR 01 ...

Abel Acosta, Clerk

ORAL ARGUMENT REQUESTED

## IDENTITY OF JUDGE, PARTIES, and COUNSEL

In accordance with Tex. R. App. Proc. 68.4(a), Petitioner submits that the following are parties to the judgment or order appealed:

Donna Gayle Holcomb
4906 Scott Reef
Bacliff, Texas 77518

Petitioner

Mark Aronowitz -
P.O. Box 1201
Texas City, TX 77592

Trial counsel for Appellant.

Markay Stroud -
Harry Lawrence
1201 Franklin
Houston, TX 77002

Trial counsel for the State of Texas.

Dan McRory -
Texas. 1201 Franklin
Houston, TX 77002

Appellate counsel for the State of

Hon. Belinda Hill -
Court. 230th District Court
1201 Franklin

Presiding judge of the Trial

Jerome Godinich, Jr.
929 Preston, Suite 200
Houston, Texas 77002

Attorney for Appellant in Court of Appeals.

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES, and COUNSEL...................................................ii

TABLE OF CONTENTS.....................................................................................iii

INDEX OF AUTHORITIES..............................................................................iv

STATEMENT REGARDING ORAL ARGUMENT............................................v

STATEMENT OF THE CASE...............................................................................2

STATEMENT OF PROCEDURAL HISTORY........................................................3

GROUNDS FOR REVIEW...................................................................................4

    A.    **GROUND FOR REVIEW NUMBER ONE**: The court of appeals erred by applying an incorrect standard of review. The panel erred by failing to apply a heightened standard of sufficiency where a commercial transaction is involved. (Op. at 25-30)......................

    B.    **GROUND FOR REVIEW NUMBER TWO:** The court of appeals erred by applying an incorrect standard of review. The failure to return payments made under a contract does not constitute theft. (Op. at 27).............................................

    C.    **GROUND FOR REVIEW NUMBER THREE:** The court of appeals erred in its application of the "doctrine of chances." (Op. at 25-29)

    D.    **GROUND FOR REVIEW NUMBER FOUR:** The court of appeals erred in finding that Petitioner was not harmed by the violation of the double jeopardy clause of the U.S. Constitution and reforming the judgment to allow for the lesser included offense. (Op. at 31-32)

ARGUMENT...........................................................................................................5

PRAYER FOR RELIEF.........................................................................................18

APPENDIX.............................................................................................................20

# INDEX OF AUTHORITIES

**CASES**                                                                    **Page**

*Baker v. State*, 986 S.W.2d 271 (Tex. App. – Texarkana 1998, pet. ref'd)...........8, 9

*Bokor v. State*, 114 S.W.3d 558 (Tex. App. - Fort Worth 2002, no pet.)..............4, 6

*Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)........16

*Cox v. State*, 658 S.W.2d 668 (Tex. App. - Dallas 1983, pet. ref'd)....................8, 9

*De La Paz v. State*, 279 S.W.3d 336 (Tex. Cr. App. 2009)..............................10, 11

*Fox v. State*, 115 S.W.3d 550 (Tex. App. - Houston [14th Dist.] 2002, pet. ref'd)..................................................................................................10

*Hesbrook v. State*, 149 Tex. Crim. 310, 194 S.W.2d 260 (1946).........................8, 9

*Jacobs v. State*, 230 S.W.3d 225 (Tex. App. - Houston [14th Dist.] 2006, no pet.) ...............................................................................................4, 6

*Morgan v. State*, 692 S.W.2d 877 (Tex. Cr. App. 1985)..............................11

*Phillips v. State*, 640 S.W.2d 293 (Tex. Cr. App. 1982)..............................7

*Plante v. State*, 692 S.W.2d 487 (Tex. Cr. App. 1985) ...................................10, 11

*Smalis v. Pennsylvania*, 476 U. S. 140, 145-145 (1986).............................16

*Smith v. Massachusetts*, 543 U.S. 462, 468, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005)......................................................................................15

*Stockman v. State*, 826 S.W.2d 627 (Tex. App. - Dallas 1992, pet. ref'd)...........4, 6

*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)......................................................................15

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument will be helpful. Petitioner requests oral argument. Petitioner will attempt to find an attorney to argue it for her if the Court grants Oral Argument in this case.

# TO THE COURT OF CRIMINAL APPEALS OF TEXAS

## PD-1233-14

---

**DONNA GAYLE HOLCOMB,**

*Petitioner,*

v.

**THE STATE OF TEXAS,**

*Respondent.*

---

# PETITION FOR DISCRETIONARY REVIEW

---

On Petition for Discretionary Review from the Court of Appeals
for the First District, Houston, Texas in Cause No. 01-08-00337-
CR, Affirming the Conviction in Cause No. 1141352 from the
230th District Court of Harris County, Texas.

---

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

Petitioner, Donna Gayle Holcomb, pro se, files this Petition for Discretionary

Review. In support of her request for review, Petitioner would respectfully show

the Court the following:

## STATEMENT OF THE CASE

Petitioner was charged by indictment in cause number 1141352 with aggregate theft. (Op. at 2). Petitioner pleaded not guilty and a jury trial ensued. (Op. at 2). Petitioner was found guilty and the jury assessed punishment at eleven (11) years confinement in the Texas Department of Criminal Justice- Institutional Division and a $10,000.00 fine. (Op. at 2). Petitioner filed a motion for new trial, which was overruled. Petitioner gave timely notice of appeal.

---

\*      The record on petition for discretionary review is cited as follows:

CR at *p*          .......... Clerk's record at page *p*.

RR *V* at *p*      .......... Reporter's record volume *V* at page *p*. Op. at *p*      .......... Opinion at page *p*.

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

In a PUBLISHED opinion delivered August 28, 2014, a panel of the First Court of Appeals REVERSED Petitioner's conviction for aggravated theft and REMANDED the case for the trial court to REFORM the judgment and conduct a new punishment hearing. On September 12, 2014, The Petitioner filed a pro se[1] motion for extension of time to file a motion for rehearing. Petitioner intended to file a motion for rehearing. The Petitioner's Petition for Discretionary Review ("PDR") was due on September 27, 2014. Petitioner filed a motion to proceed pro se in this Court which was granted. Petitioner filed a motion for extension of time[2] to file her PDR which was granted and made Petitioner's PDR due on March 9, 2015.

---

[1] In May of 2014, Petitioner wrote to her court appointed attorney, Jerome Godinich, and the court of appeals that Godinich would not contact her despite repeated requests. She was forced to file motions pro se as Godinich missed at least one deadline. Godinich filed a motion for extension of time to file a petition for discretionary review in this Court on September 12, 2014 without authority from Petitioner and without responding to Petitioner's repeated requests for him to contact her or move to withdraw, which caused the court of appeals to refuse to rule on her motion for extension of time to file a motion for rehearing because Godinich's motion was electronically filed with this Court and Petitioner's motion was filed with the court of appeals under the mailbox rule.

[2] This was Petitioner's second extension request granted by this Court.

# GROUNDS FOR REVIEW

A. **GROUND FOR REVIEW NUMBER ONE**: The court of appeals erred by applying an incorrect standard of review. The panel erred by failing to apply a heightened standard of sufficiency where a commercial transaction is involved. (Op. at 25-30).....................

B. **GROUND FOR REVIEW NUMBER TWO:** The court of appeals erred by applying an incorrect standard of review. The failure to return payments made under a contract does not constitute theft. (Op. at 27).......................................

C. **GROUND FOR REVIEW NUMBER THREE:** The court of appeals erred in its application of the "doctrine of chances." (Op. at 25-29)

A. **GROUND FOR REVIEW NUMBER FOUR:** The court of appeals erred in finding that Petitioner was not harmed by the violation of the double jeopardy clause of the U.S. Constitution and reforming the judgment to allow for the lesser included offense. (Op. at 31-32)

## ARGUMENT

***Ground for Review Number One:***

The court of appeals erred by applying an incorrect standard of review. The panel erred by failing to apply a heightened standard of sufficiency where a commercial transaction is involved. (Op. at 25-30).

***Reasons for Review:***

1.  The panel decision of the First Court of Appeals requires review because the court decided an important question of state law that that is in conflict with the applicable decisions of this Court on the same matter. The decision of the First Court of Appeals is in conflict with this Court's holding in *Phillips v. State*, 640 S.W.2d 293, 294 (Tex. Cr. App. 1982).

2.  The panel decision of the First Court of Appeals requires review because the court decided an important question of state law that that is in conflict with another decision of a Court of Appeals on the same matter. The panel decision of the First Court of Appeals is in conflict with its sister court of appeals decision in *Jacobs v. State*, 230 S.W.3d 225, 231–32 (Tex. App. - Houston [14th Dist.] 2006, no pet.); the Fort Worth Court of Appeals decision in *Bokor v. State*, 114 S.W.3d 558, 560– 61 (Tex. App. - Fort Worth 2002, no pet.); the Dallas court of appeals decision in *Stockman v. State*, 826 S.W.2d 627, 636 (Tex. App. - Dallas 1992, pet. ref'd) and the Texarkana Court of Appeals decision in *Baker v. State*,

986 S.W.2d 271, 274 (Tex. App. - Texarkana 1998, pet. ref'd).

3. The panel decision of the Court of Appeals requires review because the court of appeals has decided an important question of state law, which has not been, but should be settled by this Court.

*Statement of facts:*

4. Petitioner and her husband (the "Holcombs") were in the business of house moving. (Op. at 3). At trial, the complaining witnesses listed in the indictment testified that they each signed a contract with the Petitioner to purchase a house from Petitioner for Petitioner and her husband to move to a lot owned by the complaining witness. The Holcombs performed on the contracts but, for various reasons, where unable to complete the move. (Op at 3.). Instead of filing civil suits, the complainants reported the Holcombs to the police. (Op. at 3).

*Argument and Authorities:*

5. In its opinion of August 28, 2014, Petitioner submits the panel fell into error because it did not review the sufficiency of the evidence under the appropriate standard of review. When a dispute involves a commercial transaction, a heightened standard of review is necessary so that routine civil disputes do not become the subject of criminal law.

6. When the charged conduct concerns a matter for which the alleged victim and the accused had a contractual relationship, certain concerns arise. "[A]

6

claim of theft made in connection with a contract requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property." *Baker v. State*, 986 S.W.2d 271, 274 (Tex. App. - Texarkana 1998, pet. ref'd). Neither the mere failure to perform a contract, nor the mere failure "to return or pay back money after failing to perform a contract, for the performance of which the money was paid in advance," are sufficient to establish guilt of theft. *Id.* When alleging theft in connection with a contract, the State "must prove the defendant did not perform the contract and knew he was not entitled to the money, not merely that there is a dispute about the amount rightfully owed." *Jacobs v. State*, 230 S.W.3d 225, 229 (Tex. App.-Houston [14th Dist.] 2006, no pet.). A claim based upon malfeasance in connection with a contract requires proof of the false pretext or fraud in order to become a viable criminal prosecution. *Baker*, 986 S.W.2d at 274.

7.   A conviction for theft is unsupported by mere evidence that a defendant accepted money pursuant to a civil contract but failed to perform fully under the contract. See *Jacobs v. State*, 230 S.W.3d 225, 231–32 (Tex. App. - Houston [14th Dist.] 2006, no pet.); *Bokor v. State*, 114 S.W.3d 558, 560–61 (Tex. App. - Fort Worth 2002, no pet.); *Stockman v. State*, 826 S.W.2d 627, 636 (Tex. App. - Dallas 1992, pet. ref'd).

8.   In the case at bar, the court fell into error by failing to apply a

7

heightened standard of review to this dispute. The panel arrived at an erroneous conclusion because it did not analyze the evidence under the heightened standard required of commercial transactions. The evidence shows only a civil contract dispute, and not the necessary criminal intent to support Petitioner's conviction. See *Phillips v. State*, 640 S.W.2d 293, 294 (Tex. Cr. App. 1982)("The only evidence presented was appellant's failure to perform . . . which . . . is not sufficient to prove deception.").

### Ground for Review Number Two:

The court of appeals erred by applying an incorrect standard of review. The failure to return payments made under a contract does not constitute theft. (Op. at 27)

### Reasons for Review:

9.     The panel decision of the First Court of Appeals requires review because the court decided an important question of state law that that is in conflict with the applicable decisions of this Court on the same matter. The decision of the First Court of Appeals is in conflict with this Court's holding in *Hesbrook v. State*, 149 Tex. Crim. 310, 194 S.W.2d 260 (1946).

10.     The panel decision of the First Court of Appeals requires review because the court decided an important question of state law that that is in conflict with another decision of a Court of Appeals on the same matter. The panel decision

8

of the First Court of Appeals is in conflict with the Texarkana Court of Appeals decision in *Baker v. State*, 986 S.W.2d 271 (Tex. App. – Texarkana 1998, pet. ref'd) and the Dallas Court of Appeals decision in *Cox v. State*, 658 S.W.2d 668, 671 (Tex. App.- Dallas 1983, pet. ref'd).

11.    The panel decision of the Court of Appeals requires review because the court of appeals has decided an important question of state law, which has not been, but should be settled by this Court.

*Argument and Authorities:*

12.    In its opinion of August 28, 2014, Petitioner submits the panel fell into error when it cited Petitioner's failure to refund payments under the contracts as a basis for finding the evidence sufficient. (Op. at 27). The fact that one fails to return funds paid in advance after failing to perform a contract does not constitute theft. See *Hesbrook v. State*, 149 Tex. Crim. 310, 194 S.W.2d 260 (1946); *Baker v. State*, 986 S.W.2d 271 (Tex. App. – Texarkana 1998, pet. ref'd); *Cox v. State*, 658 S.W.2d 668, 671 (Tex. App. - Dallas 1983, pet. ref'd).

13.    Petitioner submits that by using two improper standards of review to decide this case, the court of appeals has overreached. The demarcation line between civil and criminal law should be clear. By stretching the boundaries of the criminal law to its breaking point, the First Court of Appeals has set a dangerous precedent. The floodgates of the criminal courts will now be flung open to receive

9

all manner of cases that should properly be decided in the civil realm.

***Ground for Review Number Three:***

The court of appeals erred in its application of the "doctrine of chances." (Op. at 25-29)

***Reasons for Review:***

14. The panel decision of the First Court of Appeals requires review because the court decided an important question of state law that is in conflict with the applicable decisions of this Court. The Court of Appeals decision is in conflict with this Court's decisions in *De La Paz v. State*, 279 S.W.3d 336, 347 (Tex. Cr. App. 2009) and *Plante v. State*, 692 S.W.2d 487, 491–92 (Tex. Cr. App. 1985).

15. The panel decision of the First Court of Appeals requires review because the court decided an important question of state law that that is in conflict with another decision of a Court of Appeals on the same matter. The panel decision of the First Court of Appeals is in conflict its sister court's decision in *Fox v. State*, 115 S.W.3d 550, 559 (Tex. App. - Houston [14th Dist.] 2002, pet. ref'd).

16. The panel decision of the Court of Appeals requires review because the court of appeals has decided an important question of state law, which has not been, but should be settled by this Court.

10

*Argument and Authorities:*

17. In its opinion of August 28, 2014, Petitioner submits the panel fell into error when it misapplied the "doctrine of chances" to Petitioner's sufficiency of the evidence claim.

18. The "doctrine of chances" is a legal theory based on the concept of logical implausibility. See *Fox v. State*, 115 S.W.3d 550, 559 (Tex. App. - Houston [14th Dist.] 2002, pet. ref'd). It provides that the more often unusual events occur under the similar circumstances, the less likely is the unusual event to be the true cause. *De La Paz v. State*, 279 S.W.3d 336, 347 (Tex. Cr. App. 2009) ("The 'doctrine of chances' tells us that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance."); *Plante v. State*, 692 S.W.2d 487, 491–92 (Tex. Cr. App. 1985).

19. In Texas, the doctrine of chances has most often been applied when the State seeks to introduce evidence of extraneous offenses to prove intent or to rebut a defensive theory of accident or mistake. See, e.g., *Plante*, 692 S.W.2d at 491–92; *Morgan v. State*, 692 S.W.2d 877, 882, n.7 (Tex. Cr. App. 1985). In *Plante*, the defendant-contractor purchased adobe tile on credit and failed to pay for it. *Plante*, 692 S.W.2d at 489–90. The Court of Criminal Appeals held that evidence of other instances when the defendant failed to pay for goods or services rendered on credit was admissible, under the doctrine of chances, to show intent.

11

*Id.* at 493 ("If a person repeatedly fails to pay for items purchased on credit, we believe the natural inference to be that he or she is seeking to obtain something for nothing.").

20. In the case at bar, the court of appeals invoked the doctrine of chances to conclude that Petitioner possessed the requisite intent to deprive the owners of their property (money) wherein the owners/complaining witnesses were contracting to purchase and move homes belonging to the Holcombs when she was unable to fully perform the contracts to move the homes. The panel cited several instances where the Appellant and her husband did not perform the contracts to the satisfaction of the clients. (Op. at 4-8). The panel did not, however, compare the few instances of failure to completely perform in relation to those occasions where the Petitioner did move houses successfully.

21. The doctrine of chances says that when unusual events repeatedly occur, the less likely is the unusual event to be the true cause. The doctrine of chances should not be invoked in a vacuum, however. It is improper to select a few unusual events and claim they are nefarious without a comparison of the unusual events in relation to the whole. A factory making widgets, for example, is going to have a certain percentage of widgets produced that are defective. It would be improper to pick out the defective widgets and invoke the doctrine of chances without comparing the percentage of defective widgets to the total number of

widgets that were produced.

22. The Petitioner was in the business of moving houses. Numerous witnesses testified on her behalf that she provided house moving services successfully, including one of the State's complaining witnesses.[3] Without comparing the number of unsuccessful moves to the number or percentage of successful house moves, the doctrine of chances cannot be properly invoked. The panel, therefore, erred in its application of the doctrine of chances.

***Ground for Review Number Four:***

The court of appeals erred in finding that Petitioner was not harmed by the violation of the double jeopardy clause of the U.S. Constitution and reforming the judgment to allow for the lesser included offense of third-degree felony theft.

***Reasons for Review:***

23. The panel decision of the First Court of Appeals requires review because the court decided an important question of federal law that is in conflict with the applicable decisions of the United States Supreme Court. The Court of Appeals decision is in conflict with the U.S. Supreme Court's decision in

---

[3] The State included in the indictment of Petitioner in September of 2007 for theft of property of $25,000.00 of, *inter alia,* Jose Hinojosa and Josefina Hinojosa who purchased a house from Petitioner for a total contract price of $25,000.00, which was moved, delivered, set up and completed by the Holcombs. Jose and Josefina Hinojosa's house which they purchased from Petitioner was set up on a new foundation by Petitioner's husband and completed in January of 2007, eight months prior to Petitioner's indictment for theft of the Hinojosa's $25,000.00. The State indicted the Holcombs for theft of the entire $25,000.00 fully earned under the contract by the Holcombs.

13

*Smalis* v. *Pennsylvania,* 476 U. S. 140, 145 (1986).

24. The panel decision of the First Court of Appeals requires review because the court decided an important question of federal law that is in conflict with a decision of the U.S. Supreme Court on the same matter. The panel decision of the First Court of Appeals is in conflict with the U.S. Supreme Court in *Smith v. Massachusetts,* 543 U.S. 462, 468, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005).

25. The panel decision of the Court of Appeals requires review because the First Court of Appeals has decided an important question of state and federal law that is in conflict with a decision of this Court in *Ex parte Goodman,* 152 S.W.3d 67, 71-72 (Tex. Crim.App.2004) on the same matter and which should be decided by this Court.

### *Argument and Authorities:*

26. In its opinion of August 28, 2014, the court of appeals erred in finding that Petitioner was not harmed by the violation of the double jeopardy clause of the U.S. Constitution and reforming the judgment to allow for the lesser included offense of third-degree felony theft.

27. Petitioner was indicted for theft of property (money) belonging to Marvin Bledsoe ("Bledsoe's) and his testimony was damaging to Petitioner and different than the other testimony of the other complaining witnesses.[4] Petitioner

---

[4] Bledsoe's testimony was that Petitioner picked up a down payment check from Lasha Green

14

and her husband performed under the written contracts on every contract collecting draws for work performed pursuant to the contracts. The jury heard post-acquittal fact-finding testimony from Lasha Green ("Green").[5]

28. Specifically, the jury, having heard testimony from Bledsoe which clearly was inflammatory, prejudicial and unlike the testimony of any of the other complaining witnesses (other complaining witnesses merely testified as to contractual disputes which were made into criminal charges), should not have heard Green's post-acquittal fact-finding testimony bolstering Bledsoe's testimony. The lesser included offense concerning the amount alleged to have been taken by Petitioner, required the same facts and issues to be proven with each instance of alleged theft to be an element of the offense of aggregated theft. The jury should not have heard post-acquittal fact-finding testimony which they used to determine their verdict of guilt or innocence on the lesser included offense of third-degree

---

and then sped away and was never heard from again until months later when Bledsoe and Green saw the home sitting on beams on the side of the highway and had it moved themselves by another mover. The undisputed testimony at trial was that the contract was with Green and the money paid on the down payment was Green's. The State had to have Green's testimony proving that Bledsoe could testify as an owner of the property (money). After the State rested its case, Petitioner requested a directed verdict as to Bledsoe. The State argued against the directed verdict and the Court said it would consider it. Bledsoe testified that Petitioner took the down payment and sped away from the bank never be heard from again. The State told the trial court that it could not give Green's number to Petitioner's attorneys because Green had never responded to the State's subpoena and they did not have her phone number. The trial court granted the directed verdict of acquittal.

[5] Petitioner does not waive her right to assert that Green did not testify.

15

felony theft.

29.    In *Ex parte Goodman,* this Court decided a case wherein an appellant would be harmed under Double Jeopardy if the State was allowed to use the facts of a theft upon which the appellant had been acquitted or dismissed to prove up facts alleged in another aggregated theft case, even if that aggregated theft case was a lesser included offense.

> "Because the trial court granted the State's motion to dismiss the first indictment, the Double Jeopardy Clause prohibits the State from reprosecuting appellant for the one theft alleged in the first indictment. *Proctor v. State,* 841 S.W.2d 1, 3-4 (Tex.Crim.App.1992). The Double Jeopardy Clause also prohibits the State from prosecuting appellant for any lesser offense within the theft alleged in the first indictment, since, for the purposes of the Clause, a greater offense and a lesser included offense are 'the same offence.' *Brown v. Ohio,* 432 U.S. 161, 168, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The State, in its current prosecution of appellant for aggregated theft, may attempt to prove any number of the aggregated theft's constituent thefts. However, consistent with the Double Jeopardy Clause, the State may not attempt to relitigate the facts underlying the theft alleged in the first indictment in an effort to prove that that offense or any of its lesser included offenses is one of the aggregated theft's constituent thefts. In other words, the State, in proving aggregated theft, may not rely upon proof of the theft alleged in the first indictment or any of its lesser included offenses. At appellant's trial for aggregated theft, the trial court must ensure that the State does not rely upon such proof. If necessary, the trial court may require the State to prove, by a preponderance of the evidence, that it is not relying upon such proof. If the State is unable to so prove, then the trial court must select,

16

from among the constituent thefts that the State does prove, and strike from the jury's consideration, the one constituent theft that most closely resembles the theft alleged in the first indictment. In that way, the trial court will ensure appellant's rights under the Double Jeopardy Clause."

30. Petitioner was acquitted of the greater offense which included Bledsoe. The Supreme Court has defined an "acquittal" as a decision "actually represent[ing] a resolution, correct or not, of some or all of the factual elements of the offense charged." *Smith v. Massachusetts,* 543 U.S. 462, 468, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005) (quoting *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)).

31. It is understandable as to why the State would want to prosecute offenses under 31.09 of the Texas Penal Code. Even if there is no evidence of anything other than civil contractual disputes over a long period of time (years) and the defendant has completed as many projects as not with valid reasons as to why they were not completed through no fault of the defendant, the State may still obtain a conviction from a jury who only sees several people who were dissatisfied with the outcome.[6] "[T]he Double Jeopardy Clause bars a post-acquittal appeal by the

---

[6] Petitioner has asked each of her appellate attorneys in this case to appeal on, *inter alia,* the basis of ineffective assistance of counsel. Specifically, Petitioner's trial attorneys worked against her. They promised to call witnesses that they did not call. Petitioner has always maintained her innocence while stating that she was framed by Chris Di Ferrante, an attorney who was suing Petitioner's parents for their 40+ year homestead in Kemah, Texas. Di Ferrante stalked Petitioner's jobs to keep houses from being moved and Petitioner's police escorts (house movers

17

prosecution not only when it might result in a second trial, but also if reversal would translate into 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.'" *Smalis v. Pennsylvania,* 476 U. S. 140, 145-145(1986) (quoting *Martin Linen, supra,* at 570).

## PRAYER FOR RELIEF

FOR THESE REASONS, Petitioner respectfully asks this Court to grant review of the decision of the court of appeals. Petitioner further prays that this Court will reverse the judgment of the court of appeals and allow Petitioner to have a new trial on guilt or innocence, instead of just a new trial on the punishment phase as is ordered now.

Donna Gayle Holcomb
4906 Scott Reef Dr.
Bacliff, Texas 77518
**Petitioner, Pro Se**

---

must have police escorts) were witnesses to the stalking. Petitioner's attorney, John Lagrappe, was not supposed to be Petitioner's attorney as the Court had allowed her to fire Lagrappe. Lagrappe solicited Petitioner's husband and Petitioner to be their attorney. Petitioner's husband was forced to keep Lagrappe or the Court would revoke Petitioner's husband's bond. Petitioner refused under any circumstances to keep Lagrappe and yet, during trial, she was forced to sit next to Lagrappe while he acted as her attorney and her attorney acted as her husband's attorney. Over 30 subpoenas were sent out, drafted by Petitioner and signed by her attorney. Subpoenaed documents proving Petitioner's innocence were never requested by her attorneys and witnesses proving her innocence were never called although they were subpoenaed. Petitioner also asked her appellate attorneys to address the issue of the fact that Petitioner had paid for the houses and performed 50% to 90% of the work wherein Petitioner was stopped by issues such as nuisance abatement liens. A City of Houston building official testified that Petitioner could not have gotten a permit until Sandi Matthieu removed the nuisance abatement lien. Petitioner did not receive any allowance off for purchasing and moving the houses sometimes over 40 to 60 miles over a period of several nights and delivering a garage to Sandi Matthieu property.

## CERTIFICATE OF COMPLIANCE WITH RULE
## 9.4(i)(3)

Certificate of Compliance with Type-Volume
Limitations and Typeface Requirements.

1.  This Petition for Discretionary Review complies with the type-volume limitation of TEX. R. APP. PROC. 9.4(i)(2) and (3) because:

    This Petition for Discretionary Review contains 4283 words (Microsoft Word), excluding the parts of the Petition for Discretionary Review exempted by TEX. R. APP. PROC. 9.4(i)(1).

2.  This Petition for DiscretionaryReview complies with the typeface requirements of TEX. R. APP. PROC. 9.4(e) because:

    This Petition for Discretionary Review has been prepared in a conventional proportionally spaced typeface using Microsoft Word 2013 in Times New Roman 14 point type.

_____
Donna Gayle Holcomb

# APPENDIX

Opinion issued August 28, 2014.



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-08-00337-CR

———————————

**DONNA GAYLE HOLCOMB, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1141352**

---

## OPINION ON REHEARING

Appellant Donna Gayle Holcomb has moved for rehearing. We grant rehearing, withdraw our opinion and judgment of February 16, 2012, and issue the following in their stead.

A jury convicted appellant, Donna Gayle Holcomb, of theft of property with an aggregated value of between $100,000 and $200,000, a second-degree felony. *See* TEX. PENAL CODE ANN. §§ 31.03(a), (b), (e)(6), 31.09 (West 2011 & Supp. 2014). It assessed punishment at eleven years' imprisonment and a $10,000 fine. On appeal, Holcomb challenges the sufficiency of the evidence and contends that the trial court violated her rights under the federal constitution's double jeopardy clause by naming a complainant in the jury charge and entering judgment on the jury's guilty finding despite its earlier disposition of that complainant's charges by means of a directed verdict. We reform the judgment to convict Holcomb of the third-degree felony theft of property with an aggregated value between $20,000 and $100,000, vacate the sentence, and remand to the trial court for a new sentencing hearing on the third-degree felony theft conviction. *See* TEX. PENAL CODE ANN. § 31.03(e)(5) (West Supp. 2014).

## Background

The State indicted Holcomb for theft of property valued at between $100,000 and $200,000 by means of deception or coercion and pursuant to one scheme and continuing course of conduct. The State tried Holcomb alongside her

2

husband and co-defendant, Curtis Wayne Holcomb.[1] The indictment specifically charged that Holcomb:

> on or about VARIOUS DATES BETWEEN JANUARY 15, 2004 THRU SEPTEMBER 20, 2006, did then and there unlawfully, pursuant to one scheme and continuing course of conduct, without effective consent, namely, consent induced by deception and/or coercion, appropriate, by acquiring or otherwise exercising control over property, namely money, owned by Janet Lester, and/or José Hinojosa, and/or Josefina Hinojosa, and/or Walter Davis, and/or Marvin Bledsoe, and/or Barbara Heins, and/or Sandra Mathieu, and/or Mark Theodoridis, with the intent to deprive Janet Lester, and/or José Hinojosa, and/or Josefina Hinojosa, and/or Walter Davis, and/or Marvin Bledsoe, and/or Barbara Heins, and/or Sandra Mathieu, and/or Mark Theodoridis of said property, and the total value of the property appropriated from the above persons was one hundred thousand dollars or more but under two hundred thousand dollars.

The State later abandoned the charges relating to the Hinojosas.

The Holcombs held themselves out to be in the business of selling and relocating older houses. At trial, the complainants each testified to having contracted with the Holcombs to move a house. Although the Holcombs performed some of the initial work they had promised to do, ineffective communication, extensive delays, and shoddy workmanship plagued each of the arrangements. The Holcombs delivered none of the houses to these complainants,

---

[1] Curtis Holcomb was convicted of third-degree felony theft of property with an aggregated value of between $20,000 and $100,000. On appeal, this court affirmed his conviction, overruling his challenge to the legal and factual sufficiency of the evidence. *See Holcomb v. State*, No. 01-08-00338- CR, 2011 WL 2089630 (Tex. App.—Houston [1st Dist.] May 19, 2011, pet. ref'd) (mem. op.).

3

and they did not refund any of the substantial down payments that the complainants had made. Disputes broke out, and some of the complainants reported the Holcombs to the police. The State claimed that Holcomb misappropriated a total of $108,175 from the complainants. The record contains testimony from the complainants as follows:

**Janet Lester**: In March 2005, Lester hired the Holcombs to move a house she bought from Houston to Navasota. She paid a first installment of $12,000. Lester understood from the Holcombs that the move would take about three weeks. Lester had questions about preparing the Navasota lot for the home, so she attempted to contact the Holcombs, but was unable to reach them at any of the telephone numbers provided. After three weeks, Holcomb returned Lester's call. Holcomb informed Lester that the move would not occur for another two to three weeks. By mid-April, Holcomb had placed the house on one beam and asked Lester for the next installment of $4,000. Lester paid the installment. Still, the Holcombs did not move the house. The roof was removed, and the house began to deteriorate on the original site. The Holcombs would not return Lester's telephone calls; when Lester finally was able to speak to Holcomb, Holcomb provided her with excuses for the delay, but did not perform any further work. The house was red-tagged and eventually torn down by the city.

**Walter Davis**: In August 2006, Davis contracted with Holcomb to move a house from Houston to property he owned in Madisonville, Texas. Holcomb told him that it would take three weeks to accomplish the move. Davis made a down payment of $8,675. Four weeks later, Holcombe contacted Davis to make arrangements to meet him for the second installment of $3,000 under the contract. Holcomb showed Davis that the house had been placed on beams. After that, Holcomb disappeared; Davis was unable to reach Holcomb at the telephone numbers provided, and a certified letter he sent to Holcomb went unclaimed.

**Mark Theodoridis**: In April 2004, Theodoridis signed a contract with Holcomb in connection with purchasing and transporting a house located in Pearland to the Theodoridis's property in Goliad which, Theodoridis explained to Holcomb, was about 175 miles away. Theodoridis made an initial payment of $10,500.

Theodoridis noticed that the house remained in Pearland beyond the contracted delivery date of March 15, 2004. In the following weeks, Theodoridis called Holcomb multiple times about the status of the move. Holcomb gave him various excuses. Theodoridis paid the second installment of $3,000 in early April for placing the house on beams for transport. Also around this time, the Holcombs removed the roof from the house, but did not cover the opening with a tarpaulin. The house stood unprotected from the elements for several months. In October,

5

Holcomb informed Theodoridis the house was ready to move and offered to deliver it within thirty days. Theodoridis informed Holcomb that she was responsible for the rain damage to the home, but he accepted her offer. After that point, Theodoridis tried to contact the Holcombs numerous times, but without success. By March 2005, Holcomb sent Theodoridis a letter asking him to rescind the contract, which he agreed he would do if she refunded his payment. He did not hear from her again, although by late summer, the home he had purchased disappeared from the lot.

**Barbara Heins**: In the fall of 2004, Heins contracted with the Holcombs to buy a house and have it placed on her property in Galveston County. Curtis showed her a home in the Houston Heights area that she agreed to buy. When Heins made the $17,500 down payment, the Holcombs told her that the home would be moved to her property by February 1, 2005. In late December 2004, Holcomb contacted Heins to inform her that they had placed the house on beams for transport, which triggered another $5,000 payment. The February delivery date passed without the delivery. Heins learned that, contrary to Holcomb's representation, the Holcombs had not yet placed the house on beams. Over the next several weeks, Heins repeatedly telephoned the Holcombs, but to no avail. They did not answer their phones, and their voicemail was full and would not allow her to leave a message. At some point, the Holcombs removed the roof of

6

the house, but failed to cover it with a tarpaulin. In the summer of 2006, Heins found the house, broken in two, at a vacant lot approximately four miles from her Galveston County property.

**Sandra Mathieu**: Mathieu contracted with Holcomb in November 2004 to move a house from a lot in Houston that was slated for new construction to another lot in the city that Mathieu owned. When Mathieu made the down payment, she understood that the move would occur within a month or so. In February 2005, when Holcomb had the house placed on beams, Mathieu paid the next installment. By June 2005, Holcomb informed Mathieu that a utility pole on Mathieu's lot posed an obstruction to the move. By early July, Mathieu had the pole removed and informed Holcomb so that the house could be delivered. In August 2005, Holcomb told Mathieu that she could not move the house because of a lien on the property. Mathieu provided documentation showing that the lien was invalid, but Holcomb told her that she would have to get the lien officially removed. In the meantime, the house had to be moved from the lot, so Holcomb arranged to move it to another property for storage.

Mathieu had the lien removed within a month, but for the next several months, despite repeated calls to Holcomb, the house was not moved to her lot. By December 2005, Mathieu, who already had paid Holcomb $25,500, ultimately hired someone else to complete the move. By then, the home was in poor

condition because the Holcombs failed to cover the top of the house after removing the roof and vagrants lived in it while it stood on the other property.

**Marvin Bledsoe**: Bledsoe testified that he and his girlfriend, LeSha Green, contracted with Holcomb in May 2005 to purchase a house and have it moved to Brazoria County. Bledsoe and Green met Holcomb at a bank, where Green signed a contract and gave Holcomb a check for $19,000. When they asked for a copy of the contract, Holcomb told Green and Bledsoe to follow her to a Kinko's store. Once on the road, Bledsoe recounted, Holcomb began running red lights and stop signs. Unable to keep up, Bledsoe called Holcomb a bit later. Holcomb explained that she had been in a rush to reach her father, who had suffered a heart attack. Holcomb promised to be in contact soon, but Bledsoe's later attempts to reach her were fruitless. Several weeks later, Bledsoe saw Curtis working on the house that was to be moved. The two spoke briefly, but Bledsoe was unable to reach either Holcomb or Curtis afterwards. After filing a police report, Bledsoe finally spoke to Holcomb; problems nevertheless persisted.

One night in October 2005, a neighbor called Bledsoe and informed him that the house was being moved. Bledsoe and Green raced over, where they saw the Holcombs and several other individuals pulling the house out into the street. Due to its height and trees obstructing the path, however, the house was moved just 200 yards. Over the next two weeks, Bledsoe tried to contact Holcomb, but again, was

8

unable to reach her. One night, the house was gone. When Bledsoe finally reached Holcomb by phone, she told him not to worry about the house and that he would never find it. A few weeks later, while taking a shortcut home, Bledsoe noticed a familiar house that was advertised for sale. He entered the house, and, satisfied that it was the house he had purchased, had it relocated at his own expense. Bledsoe described the house's condition by the end as "destroyed": all of the windows were broken, and it had a big hole in the roof.

Cross-examination of Bledsoe focused on the ownership of the $19,000 paid to Holcomb. Bledsoe expressed that, due to his relationship with Green, he felt that both of them owned the money. Under further questioning, however, he conceded that the funds used were held by either Green or by S.A.G. Enterprises, L.L.C., a business entity managed by Green:

[Counsel]: [T]he funds actually came out of a bank account from S.A.G. Enterprises, L.L.C. or LeSha Green, correct?

[Bledsoe]: I don't think it was S.A.G. It was from LeSha because [payment occurred at] Bank of America. . . . [Holcomb] wouldn't accept a personal check.

[Counsel]: But didn't S.A.G. Enterprises, L.L.C. bank at Bank of America?

[Bledsoe]: Yes.

[Counsel]: And you, in fact, did not have an account at Bank of America?

[Bledsoe]: Yes, correct.

[Counsel]: So, it couldn't have been your funds?

[Bledsoe]: Correct.

9

At the conclusion of the State's case-in-chief, the Holcombs moved for directed verdict challenging, among other things, the sufficiency of the evidence relating to Bledsoe's ownership of the money transferred to the Holcombs. The court heard argument from both sides and reserved its ruling until the following day to allow time for review of Bledsoe's testimony on the issue of ownership. The State rested its case and the next morning, the court granted the motion for directed verdict in part, explaining:

> The Court having reviewed the record and [Bledsoe's] testimony . . . regarding the check, regarding his position as manager and specifically a question that was asked of Mr. Bledsoe—the question was, "So it couldn't have been your funds, correct?" And his response was, "Correct." The defendant's Motion for Instructed Verdict as to the complainant Marvin Bledsoe is granted in each case.

The defense went forward with its case, with Holcomb testifying on her own behalf. On cross-examination, she stated that she had made the contract with Green and that it was Green who had given her the check.

The State then called Green to testify in rebuttal.[2] Green stated that although the funds came directly from S.A.G. Enterprises, L.L.C.'s business account, they ultimately belonged to both her and Bledsoe:

---

[2] Although the defense had objected earlier to relitigation of the ownership issue, the court did not make a ruling on the record.

[Counsel]: At some point in time did you get funds to pay for this house?

[Green]: Yes, ma'am.

[Counsel]: What account did those funds come from?

[Green]: At a business account, S.A.G. Enterprises.

[Counsel]: Whose business is that?

[Green]: Marvin and I.

[Counsel]: Whose funds were used to purchase the house?

[Green]: Those were our funds together.

While cross-examining Green, defense counsel was called to the bench in the midst of a series of questions regarding S.A.G. Enterprises. There, the court asked about the relevancy of the questions and advised:

> If the issue is ownership, the issue is that [of] ownership of the funds, not the ownership of the company. So, if you ask [Green] about—if this is being offered for impeachment, then let's get straight to that and not about an issue of resurrecting a corporation or who didn't resurrect a corporation. If it's to impeach Mr. Bledsoe, let's get after that.

With that, counsel stopped pursuing the line of questioning.

Once both sides rested, the court asked if there were any objections to the jury charge, to which Holcomb's counsel responded, "We have nothing, Your Honor." The charge, however, instructed the jury to convict Holcomb upon finding, beyond a reasonable doubt, that she committed theft by deception against "Janet Lester, or Walter Davis, *or Marvin Bledsoe*, or Barbara Heins, or Sandra

11

Mathieu, or Mark Theodoridis" (emphasis added). The jury subsequently found Holcomb guilty of second-degree felony theft of property.

## Discussion

We would normally begin our discussion with an analysis of Holcomb's evidentiary sufficiency challenge. As a prudential matter, courts generally refrain from passing on constitutional questions unless necessary to the disposition of a case. *See In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) ("As a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds."). In this case, Holcomb's evidentiary sufficiency challenge depends in part on our resolution of her double jeopardy challenge: if we conclude that the trial court's directed verdict on Bledsoe's complaints against Holcomb constitutes an acquittal under the Double Jeopardy Clause, then it was error to name Bledsoe in the jury charge and, in addressing Holcomb's evidentiary sufficiency challenge, the $19,000 that she allegedly misappropriated from Bledsoe cannot be considered toward the aggregate amount of the theft. We therefore begin by examining Holcomb's contention that the trial court erred by naming Bledsoe in the jury charge after the directed verdict had already disposed of Bledsoe's complaints against her, and that this error subjected her to a double jeopardy violation.

12

## I.  *Double Jeopardy*

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."[3] U.S. CONST. amend. V; *see also* Tex. Const. art. I § 14; TEX. CODE CRIM. PROC. ANN. art. 1.10 (West 2005) (containing similar provisions). This broad prohibition includes the requirement that a defendant not be subjected to "postacquittal factfinding proceedings going to guilt or innocence." *Smith v. Massachusetts*, 543 U.S. 462, 467, 125 S. Ct. 1129, 1134 (2005) (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 145, 106 S. Ct. 1745, 1749 (1986)).

Holcomb did not make a double jeopardy objection at trial. Nonetheless, due to the "fundamental nature of double jeopardy protections," she may raise her double jeopardy claim for the first time on appeal provided that (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and (2) enforcement of usual rules of procedural default would serve no legitimate state interests. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

---

[3]  This constitutional guarantee is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062 (1969).

13

## A. *Standard of review*

In the double jeopardy context, determination of whether an acquittal has occurred "is not to be controlled by the form of the judge's action" but instead by examining whether the judge's ruling, "whatever its label, actually represent[ed] a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S. Ct. 1349, 1354–55 (1977); *see also Benavidez v. State*, 323 S.W.3d 179, 181 (Tex. Crim. App. 2010) (observing that appellate court may order entry of judgment of acquittal only when either trial court's ruling amounts to de facto but unacknowledged acquittal or appellate court finds evidence is insufficient to support conviction). The determination of whether an acquittal occurred turns on "whether the judgment resolved any of the ultimate elements in the defense." *Moreno v. State*, 294 S.W.3d 594, 600 (Tex. Crim. App. 2009).

## B. *Analysis*

### 1. *Nature of directed verdict*

Under the first prong of *Gonzalez*, then, we consider whether the trial court's directed verdict constitutes an acquittal under the Double Jeopardy Clause. After the State rested its case-in-chief, Holcomb presented a motion for directed verdict asserting, inter alia, that there was legally insufficient evidence that Bledsoe owned

14

the $19,000 that Holcomb allegedly stole from him.[4] In granting the directed verdict as to Bledsoe immediately after the State rested its case, the trial court referred to Bledsoe's testimony in explaining the basis of its ruling, essentially, that the evidence showed—contrary to the allegations in the indictment—that Bledsoe was not the owner of the $19,000 given to Holcomb.

Ownership is an essential element of the offense of theft. *See* TEX. PENAL CODE ANN. § 31.03(a) ("A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property."). The Texas Penal Code defines an "owner" as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PENAL CODE ANN. § 1.07(a)(35)(A) (West Supp. 2014); *see also Threadgill v. State*, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (applying definition as used in jury charge to assess sufficiency of evidence). The indictment names Bledsoe as owner, but the funds were not held under Bledsoe's name, and Bledsoe conceded that he could not claim ownership of them. The trial court's directed verdict is expressly based on those facts. The trial court, therefore,

---

[4] In a prosecution for theft, the State has the burden of proving ownership. *Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986); *see also* TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014) (theft requires that accused "unlawfully appropriate[] property with intent to deprive owner of property).

determined that the evidence was legally insufficient to sustain a conviction because Bledsoe was not the owner of the funds.

It follows, then, that the trial court's inclusion of Bledsoe's name in the jury charge subjected Holcomb to further factfinding proceedings going to Holcomb's guilt or innocence on Bledsoe's complaint, in contravention of double jeopardy protections. *See Smith*, 543 U.S. at 467–68, 125 S. Ct. at 1133–34 (declaring that Fifth Amendment prohibits reexamination of court–decreed acquittal). The face of the record thus makes apparent that Holcomb was impermissibly subjected to a double jeopardy violation. *See Gonzalez*, 8 S.W.3d at 643.

### 2.    *Legitimate state interests*

Under the second prong of *Gonzalez*, we ask whether any legitimate state interests would be served by applying the usual waiver rule against Holcomb's double jeopardy claim. *See id.* "In cases where the trial court either knew or should have known of the jeopardy problem, no purpose is served in enforcing the state procedural rule [regarding waiver of double jeopardy claims not raised at trial,] and the defendant may assert this interest after trial." *Beltran v. State*, 30 S.W.3d 532, 533 n.1 (Tex. App.—San Antonio 2000, no pet.) (quoting *DeMoss v. State*, 12 S.W.3d 553, 559 n.2 (Tex. App.—San Antonio 1999, pet. ref'd)); *see State v. Torres*, 805 S.W.2d 418, 423 (Tex. Crim. App. 1991); *Shaffer v. State*, 477 S.W.2d 873, 875–76 (Tex. Crim. App. 1971) (collecting cases dating back to late

16

nineteenth century); *Grant v. State*, 247 S.W.3d 360, 370 n.8 (Tex. App.—Austin 2008, pet. ref'd); *Roy v. State*, 76 S.W.3d 87, 94 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Here, the trial court was aware or should have been aware that it was subjecting Holcomb to a double jeopardy violation by including Bledsoe in the jury charge. Just days before, the court had granted the directed verdict as to Bledsoe. *See Shaffer*, 477 S.W.2d at 875–76; *Beltran*, 30 S.W.3d at 533 n.1 (noting that "the complained-of jeopardy problem consists of two convictions, before the same judge and jury, arising out of conduct that occurred during the same criminal episode"); *Honeycutt v. State*, 82 S.W.3d 545, 547 (Tex. App.—San Antonio 2002, pet. ref'd) ("[B]ecause the two convictions were in the same court, on the same day, before the same judge, and were based on the same evidence, the enforcement of the statutory requirements would have served no state interest."). We therefore hold that no legitimate state interests would be served by applying the waiver rule to Holcomb's double jeopardy claim.

## III. State's Challenges to Double Jeopardy Claim

### A. Validity of ruling

The State contends that Holcomb's double jeopardy claim does not withstand scrutiny because the trial court had no authority—under either the common law or the Code of Criminal Procedure—to grant a directed verdict in this

case. This purported lack of authority, the State claims, rendered the directed verdict a legal nullity incapable of offending the Double Jeopardy Clause. The Court of Criminal Appeals recently refused to countenance this same argument, in part because—just as here—the State failed to interpose this objection at trial. *See Moreno*, 294 S.W.3d at 601–02 (holding that trial court's grant of defendant's motion for directed verdict before State rested case-in-chief constituted acquittal for double jeopardy purposes).

In any event, challenges to a court's authority to render an acquittal are almost never reviewable on appeal. The Double Jeopardy Clause generally bars appellate review of judgments of acquittal, even when those judgments are erroneously made. *Sanabria v. United States*, 437 U.S. 54, 64, 69, 98 S. Ct. 2170, 2178, 2181 (1978); *State v. Blackshere*, 344 S.W.3d 400, 406 (Tex. Crim. App. 2011); *see Fong Foo v. United States*, 369 U.S. 141, 143, 82 S. Ct. 671, 672 (1962) (concluding that court's directed verdict of acquittal could not be reviewed without violating the Double Jeopardy Clause, despite fact that it rested upon an "egregiously erroneous foundation"). Only two remotely similar instances exist in which the double jeopardy bar does not preclude such a challenge: (1) where the court lacked jurisdiction over the case or the defendant and (2) where jeopardy failed to attach in the first place. *See Ball v. United States*, 163 U.S. 662, 669–70 (1896); *State v. Fisher*, 212 S.W.3d 378, 380–81 (Tex. App.—Austin 2006, pet.

18

ref'd). Neither exception applies here. There is no contention—and nothing in the record to suggest—that the court lacked jurisdiction over this case or Holcomb. And because this was a jury trial, "jeopardy attache[d] when the jury [was] empaneled and sworn." *Moreno*, 294 S.W.3d at 597; *cf. Fisher*, 212 S.W.3d at 381 (holding that jeopardy did not attach because "no jury was ever empaneled or sworn, no evidence was offered or received, and no plea was entered by [the defendant] after the announcement of ready by both sides").

### B. *Retractability of ruling*

The State alternatively contends that, even if the trial court had authority to render a directed verdict, its failure to actually direct the jury to return a particular verdict and its inclusion of Bledsoe in the jury charge amounted to an implied retraction of the directed verdict. The Double Jeopardy Clause, however, "prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict." *Smith*, 543 U.S. at 467, 125 S. Ct. at 1133. In *Smith*, the Supreme Court specifically held:

> If, after a facially unqualified midtrial dismissal of one count, the trial has proceeded to the defendant's introduction of evidence, the acquittal must be treated as final, unless the availability of reconsideration has been plainly established by pre-existing rule or case authority expressly applicable to midtrial rulings on the sufficiency of the evidence . . . . [A]ny contention that the Double Jeopardy Clause must itself (even absent provision by the State) leave open a way of correcting legal errors is at odds with the well- established rule that the bar will attach to a preverdict acquittal that is patently wrong in law.

*Id.* at 473, 125 S. Ct. at 1137.

The State does not identify, and our own examination of relevant precedent fails to reveal, any pre-existing rule or authority "plainly establish[ing]" the ability of a Texas trial court to reconsider a partial midtrial directed verdict like the one granted in Holcomb's case. *See id.* The Texarkana Court of Appeals recently confirmed the lack of such a rule, noting that "[i]n Texas, there is no such statute, rule, or case" allowing for reconsideration under the rule set out in *Smith.*[5] *Towery*, 262 S.W.3d at 592.

The jury's failure to return a verdict duplicating the trial court's directed verdict does not undermine the finality of the trial court's ruling either. No pre-existing rule or authority requires a trial court, after holding the evidence to be legally insufficient to support some element of the State's case, to submit that decision to the jury.[6] *See State v. Lewallen*, 927 S.W.2d 737, 739 n.2 (Tex. App.—

---

[5] *Towery v. State* further concluded that *Smith v. Massachusetts* did not apply because the trial court's directed verdict of acquittal was a "clerical error" that it later corrected. 262 S.W.3d 586, 596–97 (Tex. App.—Texarkana 2008, pet. ref'd). *Towery* also noted that nothing in the record showed that the trial court intended to enter an acquittal and that there was no evidence of reliance on the ruling by any of the litigants. *Id.* at 593–97. In contrast, the record here shows that the trial court explicitly considered the sufficiency of the evidence and explained its ruling.

[6] The State points to article 38.17 of the Texas Code of Criminal Procedure as the authority for reconsidering a directed verdict, but that provision applies only under specific conditions; it does not establish a general rule. *See* TEX. CODE CRIM. PROC. ANN. art. 38.17 (West 2005) (providing that "[i]n all

20

Fort Worth 1996, no pet.) ("A 'directed verdict' is commonly defined as the action taken by a trial judge in a jury trial to decide the issues in the case *without allowing them to be submitted to the jury* because, as a matter of law, the party with the burden of proof has failed to make a prima facie case for jury consideration." (emphasis added)).

On the contrary, the widely-accepted rule is that finality will be accorded to a directed verdict based on a finding of insufficient evidence, even when that finding is unilaterally issued by a trial court.[7] *See, e.g.,* *Smith*, 543 U.S. at 464–75, 125 S. Ct. at 1132–38 (holding that Double Jeopardy Clause barred trial court from submitting count to jury when court had previously acquitted defendant of that count and rejecting argument that court's submission of that count to jury was permissible retraction of prior acquittal); *Moreno*, 294 S.W.3d at 600 (recognizing that, in jury trial case, that trial court's directed verdict triggered double jeopardy protections). This rule promotes the principles embodied in the Double Jeopardy Clause identified by the Supreme Court in *Green v. United States*, 355 U.S. 184,

cases where, by law, two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction").

[7] There are few exceptions, none of which apply to this case, such as when the judge grants an acquittal notwithstanding the jury's verdict. *See United States v. Wilson*, 420 U.S. 332, 339–52, 95 S. Ct. 1013, 1020–27 (1975) (discussing constitutional bounds of double jeopardy).

21

187–88, 78 S. Ct. 221, 223 (1957). In *Green*, the Court explained that the clause aims to protect the individual against repeated attempts to convict him of an alleged offense, which would subject that person "to embarrassment, expense and ordeal," and "compel[] him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Id.* at 187–88.

The Supreme Court also warned that "[t]he Double Jeopardy Clause's guarantee cannot be allowed to become a potential snare for those who reasonably rely upon it." *Smith*, 543 U.S. at 473, 125 S. Ct. at 1137. It explained that, "when . . . the trial has proceeded to the defendant's presentation of his case, the possibility of prejudice arises. The seeming dismissal may induce a defendant to present a defense to the undismissed charges when he would be better advised to stand silent. *Id.* at 472, 125 S. Ct. at 1136. In particular, the Court noted that in jurisdictions like Texas, that consider the entire record in reviewing evidentiary sufficiency challenges, "the defendant who puts on a case runs 'the risk that . . . he will bolster the Government case enough for it to support a verdict of guilty,'" or, through the defendant's own evidence, "may lay the foundation for otherwise inadmissible evidence in the Government's initial presentation or provide corroboration for essential elements of the Government's case." *Id.* at 472, 125 S. Ct. at 1137 (quoting *McGautha v. California*, 402 U.S. 183, 215, 91 S. Ct. 1454,

22

1471 (1971)). And in all jurisdictions, the Court observed, the danger of allowing for the retraction of an acquittal creates the danger that a partial acquittal on one count would give the defendant a false sense of security and thereby "induce the defendant to present defenses to the remaining counts that are inadvisable—for example, a defense that entails admission of guilt on the acquitted count." *Id.*

This case exemplifies the dangers identified in *Smith*. Bledsoe's inclusion in the jury charge effectively gave the State a second try at getting a conviction that it could not have obtained at the conclusion of its case-in-chief. Also, the directed verdict may well have lulled Holcomb into testifying on the issue that led to the State's ability to call Bledsoe's girlfriend as a rebuttal witness.[8] As a result, we hold, in keeping with *Smith* and *Moreno*, that the Double Jeopardy Clause precluded the trial court from retracting its directed verdict.

## V.   *Evidentiary Sufficiency*

Holcomb contends that, as a result of the de facto acquittal on Bledsoe's complaints, the evidence is legally and factually insufficient to prove that Holcomb committed theft of property with an aggregated value of at least $100,000, the

---

[8]   The fact that Holcomb's husband was her co-defendant also may have implicated her reliance interests. *See Smith v. Massachusetts*, 543 U.S. 462, 471–72 n.6, 125 S. Ct. 1129, 1136–37 n.6 (2005) (discussing implications for multiple defendant cases). The ruling as to Bledsoe may have induced Holcomb to testify, perhaps hoping that her testimony would aid in her husband's defense as well.

23

minimum amount required to support a second-degree theft conviction. *See* TEX. PENAL CODE ANN. § 31.03(e)(6)(A).

### A. *Standard of Review*

This Court reviews legal and factual sufficiency challenges using the same standard of review. *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893, 912, 926 (Tex. Crim. App. 2010)). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11; *Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750. Additionally, the evidence is

24

insufficient as a matter of law if the acts alleged do not constitute the criminal offense charged. *Williams*, 235 S.W.3d at 750.

An appellate court determines "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). In viewing the record, direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* An appellate court presumes that the factfinder resolved any conflicting inferences in favor of the verdict and defers to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. An appellate court also defers to the factfinder's evaluation of the credibility and weight of the evidence. *See Williams*, 235 S.W.3d at 750.

**B.    *Analysis***

*1.    Intent*

Holcomb contends that the evidence is insufficient to support the jury's finding that she acted with the criminal intent to deprive the owners of their property—at most, she claims, the evidence shows failure to perform her contractual duties, which is enough to support civil claims for breach of contract,

25

but not theft. For purposes of the theft statute, the appropriation of property is unlawful if the defendant takes it without the owner's consent. TEX. PENAL CODE ANN. § 31.03(b). The owner cannot effectively consent to letting the defendant take the property if the defendant uses deception to induce consent. *Id.* § 31.01(3)(A). Relevant to this case, the Penal Code defines "deception" as:

- creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true; [or] . . .

- promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

*Id.* § 31.01(1)(A), (E).

In support of her contention, Holcomb points to evidence that she and her husband partially performed their contracts with the complainants. She and her husband prepared some of the houses to be moved by securing permits, removing roofs, loading the houses on beams, and hiring police escorts. They actually transported parts of some of the houses, and Holcomb gave various explanations for the delays and problems in moving each of the houses. According to the State, however, application of the "doctrine of chances" shows that sufficient circumstantial evidence exists to allow a rational factfinder to find beyond a

26

reasonable doubt that Holcomb did not intend to deliver the complainants' houses at the time she entered into the contracts.

The doctrine of chances is "the principle that evidence of the repetition of similar unusual events over time demonstrate a decreasing probability that those unusual events occurred by chance." *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Here, the evidence shows that the Holcombs repeatedly: (1) failed to take reasonable steps to protect the houses from the weather and other potential causes of damage in preparing the houses for transport; (2) had extensive delays, which they failed to explain to the complainants; (3) avoided the complainants' attempts to have them address and explain the delays, sometimes for months at a time; (4) failed to transport the houses even after the complainants eliminated the obstacles that Holcomb identified; and (5) never refunded any payments made.

Holcomb points to *Thomas v. State*, 753 S.W.2d 688 (Tex. Crim. App. 1988), and *Phillips v. State*, 640 S.W.2d 293 (Tex. Crim. App. 1982), in support of her contention that the State failed to prove that her failure to fully perform on the contracts was evidence of criminal intent. *Thomas* is inapposite because, having charged the defendant with the theft of a car he had acquired under a car rental contract, the State had to prove that the defendant intended to deprive the owner of the car rather than withhold it only temporarily. 753 S.W.3d at 690–91. The facts

27

relevant to Holcomb's intent present no question of temporary withholding or permanent deprivation. In *Phillips*, the defendant contracted to build an addition to the complainant's house for approximately $21,000 and asked for a down payment of approximately $7,000. *Id.* at 294. The defendant drew up some plans and conferred with the complainant. The defendant informed the complainant on several occasions, however, that he was having difficulty getting the plumbers to do their job and, ultimately, could not perform. *Id.* The Court of Criminal Appeals set aside the conviction and rendered an acquittal, holding that "[t]he only evidence presented was [defendant]'s failure to perform, which . . . is not sufficient to prove deception." *Id.* (citing TEX. PENAL CODE ANN. § 31.01(2)(E)).

Unlike *Phillips*, the record in this case does not show just a single failure to perform. It shows a pattern of conduct in which Holcomb collected payments, agreed to move houses, accomplished one or two tasks that triggered additional installment payments, but then consistently failed to transport the houses to their contracted destinations. The sequence of events is unusual, and is repeated often enough to warrant application of the doctrine of chances. The jury was free to resolve the conflicting versions of the testimony it heard from the complainants and Holcomb and to make its own determinations as to credibility. Viewed in the light most favorable to the verdict, we hold that the evidence would allow a

rational factfinder to find beyond a reasonable doubt that Holcomb did not intend to fulfill the contracts when she entered into them.

### 2. *Aggregated value of property taken*

The Penal Code provides that amounts obtained by theft pursuant to one scheme or continuing course of conduct, whether from the same or several sources, may be considered as one offense, allowing for aggregation of the property value in determining the grade of the offense. TEX. PENAL CODE ANN. § 31.09. "Aggregated theft is the sum of all its parts." *Dickens v. State*, 981 S.W.2d 186, 188 (Tex. Crim. App. 1998). "A part is a completed theft whose elements have all been proven." *Id.* Consequently, while the State is not required to prove every individual appropriation when an individual is charged with the unlawful appropriation of property with an aggregated value pursuant to one scheme or continuing course of conduct, the evidence will not be sufficient to sustain a conviction unless the State shows that the defendant illegally appropriated enough property to meet the minimum aggregated value alleged. *Lehman v. State*, 792 S.W.2d 82, 85–86 (Tex. Crim. App. 1990).

The trial court granted a directed verdict acquitting Holcomb of the theft charges relating to Bledsoe, and, as we have explained, the Double Jeopardy Clause bars us from reviewing the merits of that ruling on appeal. *See, e.g., Sanabria*, 437 U.S. at 69, 98 S. Ct. at 2181 (holding that Double Jeopardy Clause

barred appellate review of trial court's judgment of acquittal for insufficient evidence). As a result, we do not consider Green's rebuttal testimony, which was elicited after the trial court's ruling, in determining whether the evidence supports the conviction for second-degree felony theft. *See Smith*, 543 U.S. at 473, 125 S. Ct. at 1137 (holding that acquittal is final when rendered).

The State presented testimony from David Pilant, a fraud examiner with the Harris County District Attorney's Office, concerning the aggregate value of the property taken. Pilant reviewed the canceled checks drawn on the six complainants' accounts and made out to the Holcombs during the relevant period and calculated a total of $108,175. This total includes the $19,000 allegedly stolen from Bledsoe, which should have been excluded. Second-degree felony theft, however, requires proof that the property stolen had a minimum value of $100,000. TEX. PENAL CODE ANN. § 31.03(e)(6). We therefore hold that the evidence is insufficient to support the jury verdict finding Holcomb guilty of the theft of property with an aggregated value of between $100,000 and $200,000.

## VI.  *Disposition*

Based on the double jeopardy violation and the lack of evidence to support the conviction, Holcomb contends that she is entitled to a complete acquittal or a new trial. She claims she was egregiously harmed because, without the amount attributable to Bledsoe, she—"at the very worst"—would have been convicted of

30

the third-degree felony for theft of property with an aggregated value of between $20,000 and $100,000. Holcomb, however, requested and obtained a lesser-included instruction on that third-degree felony offense.

If the evidence is legally sufficient to support that lesser-included offense and no harm would otherwise result from the double jeopardy violation, we may reverse the judgment and remand to the trial court to reform the judgment to reflect conviction of the lesser-included offense. *See Bowen v. State*, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012). We consider whether Bledsoe's erroneous inclusion in the jury charge caused harm that cannot be remedied by disposing of the appeal in this way.

Reformation would not be appropriate if the record shows a lack of unanimity on the constituent elements of the lesser-included offense. *See Cosio v. State*, 353 S.W.3d 766, 772 (Tex. Crim. App. 2011); *see also* TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West Supp. 2014). In this case, the record shows that the jury could have reached a verdict that Holcomb committed theft of an aggregated amount in excess of $100,000 only by unanimously finding that Holcomb misappropriated all of the funds from all six complainants according to the State's proof at trial. Subtracting the amount attributable to Bledsoe's

31

complaints, Holcomb misappropriated $89,175.[9] We hold that any harm resulting from the inclusion of Bledsoe in the charge can be remedied by reforming the judgment to reflect conviction of the lesser-included offense of theft of property with an aggregated value of between $20,000 and $100,000.

## CONCLUSION

We reverse the judgment of the trial court and remand the case to the trial court to reform the conviction to reflect the third-degree felony of theft of property with an aggregated value of between $20,000 and $100,000, and to conduct a new punishment hearing.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Publish. TEX. R. APP. P. 47.2(b).

---

[9]   Holcomb does not dispute the amounts proven with respect to the remaining five complainants.